595 So.2d 240 (1992)
NISSAN MOTOR CORPORATION IN USA, Petitioner,
v.
Carman OROZCO, as personal representative of the Estate of Jorge Orozco, deceased, Respondent.
No. 91-3070.
District Court of Appeal of Florida, Fourth District.
March 4, 1992.
Rehearing, Rehearing and Certification Denied April 14, 1992.
Sharon L. Stedman and Craig P. Niedenthal of Rumberger, Kirk, Caldwell & Wechsler, Orlando, for petitioner.
Joel S. Perwin of Podhurst, Orseck, Josefsberg, Eaton, Meadow, Olin & Perwin, P.A., Miami, and Sheldon J. Schlesinger, P.A., Fort Lauderdale, for respondent.
Rehearing, Rehearing En Banc and Certification Denied April 14, 1992.
DOWNEY, Judge.
Petitioner, Nissan Motor Corporation in U.S.A. (Nissan), seeks review of an order of the circuit court that denied its motion to disqualify the respondent's law firm in a wrongful death case therein pending.
The respondent filed a wrongful death case in the circuit court to recover damages arising out of the alleged wrongful death of Jorge Orozco as a result of an automobile accident involving the operation of a 1981 Datsun automobile. The respondent employed the law firm of Sheldon J. Schlesinger, P.A., to prosecute the case and the petitioner, Nissan, employed the firm of Rumberger, Kirk, Caldwell, Cabaniss, Burke & Weschler (Rumberger) to defend it. During the earlier stages of the litigation, the Rumberger firm noticed the discovery depositions of approximately eight different witnesses, most of whom were the custodians of records of decedent's employers and institutions wherein the decedent had been hospitalized. Craig P. Niedenthal, Esquire, a partner in the Rumberger firm in the Orlando office, was in *241 charge of the day-to-day activities involving the case. He requested Paul Buechele, Esquire, an associate of the firm, working in their Miami office, to handle the aforesaid depositions for the firm; in due course, the depositions were taken by Mr. Buechele. Later Buechele left the Rumberger firm and became an associate in the Schlesinger firm. Several months after Buechele's departure from Rumberger, the respondent set a hearing on a motion to adopt the discovery depositions from a federal court case for use in this pending state court case.[1] By this time Buechele had joined the Schlesinger firm that represents the respondent herein. The first notice the petitioner, or its counsel, had of Buechele's association with the Schlesinger firm was when Buechele appeared at the motion hearing on behalf of the respondent. Thereafter, Rumberger, on behalf of the petitioner, moved to disqualify the Schlesinger firm as counsel for the respondent herein, based upon the apparent conflict of interest and the alleged violation of well established Florida law and the Rules Regulating The Florida Bar. In support of its motion, petitioner filed the affidavits of Niedenthal and a paralegal, Laraine Richmond, employed by the Rumberger firm. Niedenthal stated that he had several telephone conversations with Buechele regarding the case, including matters of strategy, theories of defense, and other confidential communications. The Richmond affidavit stated that Buechele had full access to the Rumberger file for the subject litigation during the time he conducted the depositions.
As a result of the filing of the disqualification motion, the Schlesinger firm terminated Buechele as an associate. Furthermore, respondent filed the affidavit of Paul Buechele, in which he asserts that, at no time during his employment with the Rumberger firm, did anyone discuss any aspects of the case with him, other than a telephone request on one occasion when Niedenthal asked him to take the depositions in Miami, referred to above. The depositions, he says, were routine discovery of various records in order to qualify them for admission at trial. He was never given the file or any part of it, nor did he ever see the file. He also flatly denies Niedenthal's statements about the several calls to him or that any strategy regarding the case was discussed or that any confidential information concerning the case was imparted to him. The affidavit goes on to state that, since joining the Schlesinger firm, he was not informed of any facts or matters pertaining to the case, except one discussion with Jack Vital, an attorney in the Schlesinger firm. That discussion pertained only to his attending the motion hearing to adopt the discovery taken in the federal case for use in this case. In sum, Buechele asserts that no discussion of the issues, or other confidential matters, ever took place.
Upon the issue drawn, the trial court conducted a hearing and found that Rule 4-1.10 of the Rules Regulating the Florida Bar (1991), sets forth the applicable rule for disqualification in this case. He found that Buechele was no longer associated with either Rumberger or Schlesinger. Furthermore, he concluded that Buechele "handled rather routine and perfunctory assignments as a junior associate," in representing the parties and that he never acquired confidential and other protected information during his former employment and that no one at the Schlesinger firm received confidential information from Buechele. Accordingly, the trial court denied the motion for disqualification.
Petitioner now contends in this proceeding that the trial court departed from the essential requirements of law in refusing to disqualify the respondent's counsel. Petitioner argues that the record herein reflects that an attorney-client relationship was shown to exist between Buechele and his former client, thus, giving rise to an irrefutable presumption that confidences were disclosed during the relationship, citing State Farm Mutual Auto Ins. Co. v. *242 K.A.W., 575 So.2d 630 (Fla. 1991). Furthermore, petitioner argues that the Schlesinger law firm now represents an interest adverse to that of Buechele's former client. Petitioner's argument is that, once it was established that the Rumberger firm represented petitioner while Buechele was an associate with Rumberger and, in fact, worked on this case, an attorney-client relationship existed between Buechele and petitioner. Thereupon, argues petitioner, an irrefutable presumption arose that confidences were disclosed which precluded Buechele, as well as the Schlesinger firm, from representing respondent in the same matter.
Respondent, however, argues that the facts of this case render the irrefutable presumption, and the many cases applying it, inapplicable. In State Farm David Wilkerson was driving a rental car in which his wife and infant daughter were passengers when it was struck by another car. The Wilkersons retained the Schlesinger law firm to represent them and filed suit against the driver of the other vehicle, as well as State Farm, David Wilkerson's uninsured motorist carrier. Subsequently, when it became evident that David Wilkerson may have contributed to the cause of the accident, he discharged the Schlesinger law firm from representing him and retained new counsel. Shortly thereafter Mrs. Wilkerson and her daughter amended their complaint adding David Wilkerson as a defendant. The Schlesinger law firm continued to represent Mrs. Wilkerson in her suit against her husband even though that law firm had previously represented Mr. Wilkerson. Subsequently State Farm filed a motion to disqualify the Schlesinger firm on grounds that Rule 4-1.9 of the Rules Regulating the Florida Bar prevented the firm from representing Mrs. Wilkerson when the same firm previously represented her husband in the same matter with an adverse interest. The Florida Supreme Court agreed and ruled that the Schlesinger firm had to be disqualified. The court recognized that there was an irrefutable presumption that confidences were disclosed between the Schlesinger firm and Mr. Wilkerson.
The respondent argues, and we agree, that State Farm is distinguishable from the instant case because there the same law firm had represented both sides in the same law suit, whereas here the Schlesinger law firm has not represented both Nissan and the plaintiff, Orozco. Only an associate, who later came to the Schlesinger firm, had previously represented the adverse party. Instead of involving an interpretation of rule 4-1.9 and the irrebuttable presumption, as State Farm did, this case involves an interpretation of rule 4-1.10(b) and (c).
The disqualification of a lawyer under Rule 4-1.9 of the Rules Regulating the Florida Bar, entitled "Conflict of Interest; Former Client," is required if it is shown 1) that there is a former attorney-client relationship; and 2) that the subject matter is the same, or substantially related. Under these circumstances, the cases generally hold that there is an irrebuttable presumption that confidences were disclosed to the attorney during the course of the attorney-client relationship. Respondent concedes that, if Buechele was still associated with the Schlesinger firm, the presumption would apply to him and both he and the firm would be subject to disqualification.
The factual situation presented here is not covered by rule 4-1.9, but, rather, it is covered by rule 4-1.10, entitled "Imputed Disqualification; General Rule," which provides:
(a) While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by rule 4-1.7, 4-1.8(c), 4-1.9, or 4-2.2.
(b) When a lawyer becomes associated with a firm, the firm may not knowingly represent a person in the same or a substantially related matter in which that lawyer, or a firm with which the lawyer was associated, had previously represented a client whose interests are materially adverse to that person and about whom the lawyer had acquired information protected by rules 4-1.6 and 4-1.9(b) that is material to the matter.

*243 (c) When a lawyer has terminated an association with a firm, the firm is not prohibited from thereafter representing a person with interests materially adverse to those of a client represented by the formerly associated lawyer unless:
(1) The matter is the same or substantially related to that in which the formerly associated lawyer represented the client; and
(2) Any lawyer remaining in the firm has information protected by rules 4-1.6 and 4-1.9(b) that is material to that matter.
(d) A disqualification prescribed by this rule may be waived by the affected client under the conditions stated in rule 4-1.7.
The commentary under rule 4-1.10 explains that, when a lawyer moves from one firm to another, the situation is governed by paragraphs (b) and (c). Graham v. Wyeth Laboratories Division of American Home Products Corp., 906 F.2d 1419, 1422 (10th Cir.1990), also explains the interplay among the various subsections of rule 4-1.10 as follows:
[T]he analysis differs according to whether the conflicted lawyer remains with the same firm throughout the prior and current representations, or changes firms. The comment to Rule 1.10 states that "[p]aragraph (a) operates only among the lawyers currently associated in a firm. When a lawyer moves from one firm to another, the situation is governed by paragraphs (b) and (c)." Id., comment to Rule 1.10. The emphasized language also indicates that paragraph (b) applies when disqualification of the moving lawyer's new firm is sought, while disqualification of the lawyer's old firm after his departure is controlled by the principles of paragraph (c).
Thus, it is respondent's contention that this case clearly falls within paragraphs (b) and (c) of rule 4-1.10 and that the conclusive presumption contained in rule 4-1.09 does not pertain to those situations.
Paraphrased, subsection (c)(1) and (2) of rule 4-1.10 provide that, when a lawyer has terminated an association with a firm, as Buechele has with Schlesinger, the firm is not prohibited from representing a person with interests materially adverse to those of a client represented by the formerly associated lawyer unless the matter is the same (which it is here) and any lawyer remaining in the Schlesinger firm has information protected by rules 4-1.6 and 4-1.9(b) material to the matter. It is, thus, apparent that subsection (c) depends upon a finding of fact without the aid of any presumption. The comments under subsections (b) and (c) support this:
Paragraphs (b) and (c) operate to disqualify the firm only when the lawyer involved has actual knowledge of information protected by rules 4-1.6 and 4-1.9. Thus, if a lawyer while with one firm acquired no knowledge or information relating to a particular client of the firm and that lawyer later joined another firm, neither the lawyer individually nor the second firm is disqualified from representing another client in the same or a related matter even though the interests of the two (2) clients conflict.
Thus, it appears that the petitioner's attempt to apply the irrefutable presumption rule to this case must fail. We believe that Graham v. Wyeth, relied upon by respondent, supports this conclusion. There, a child was given a DPT vaccine and suffered injuries. The Michaud firm represented the child. The manufacturer of the vaccine was represented by the McDonald, Tinker firm. The jury returned a verdict in favor of the child and the manufacturer appealed. While the appeal was pending Fisher, a partner in McDonald Tinker, joined the Michaud law firm. The appellate court considered whether or not to disqualify the Michaud law firm under rule 1/10(b) of the Model Rules of Professional Conduct (which is identical to the Rules Regulating the Florida Bar). The court seemingly recognized that Fisher could be disqualified because of an irrebuttable presumption that his former client had revealed confidential facts to him. But the court went on to consider whether Fisher's disqualification should extend to the entire Michaud firm. The court recognized that rule 1.10(b) (which is identical to our rule 4-1.10) requires the court to determine, as *244 a factual matter, whether the disqualified attorney had actual knowledge of client confidences which would be imputed to the lawyer's new firm. The appellate court remanded the case to the trial court for a full hearing on disqualification of both Fisher and the Michaud firm. We consider it significant in Graham that the court, although it was aware of the irrebuttable presumption, did not apply it when considering whether an individual attorney's disqualification should be imputed to the firm. Instead the court remanded for a factual determination. This supports the trial court's decision in the instant case to make a factual determination regarding whether Buechele himself had any confidential information and whether the attorneys in the Schlesinger firm acquired knowledge through Buechele regarding his prior client, Nissan.
Because of the peculiar facts of this case, a fact issue was presented on conflicting evidence and the trial court properly resolved it in favor of respondent.
Accordingly, we deny the petition for certiorari.
STONE and POLEN, JJ., concur.
NOTES
[1] The depositions of the records custodians which Buechele attended were actually noticed in a federal district court case involving the same parties and subject matter as the case sub judice.