In the Matter of OUTDOOR PRODUCTS CORP., Debtor.

Ralph Jay HARPLEY, Trustee, Plaintiff,

v.

DUCANE INDUSTRIES, Defendant.

Bankruptcy No. 87–1039–8B7.
Adv. No. 91–219.

United States Bankruptcy Court,
M.D. Florida, Tampa Division.

June 21, 1995.

John D. Goldsmith, Tampa, FL, for plaintiff.

Marsha Griffin Rydberg, Tampa, FL, for defendant.

Ralph J. Harpley, Trustee, Tampa, FL.

## ORDER ON MOTION TO DISQUALIFY THE TRENAM, KEMKER LAW FIRM

THOMAS E. BAYNES, Jr., Bankruptcy Judge.

THIS MATTER came on for consideration upon Ducane Industries' Motion to Disqualify the Professional Association of Trenam, Kemker, Scharf, Barkin, Frye, O'Neill, and Mullins as legal counsel for Ralph Jay Harpley, Trustee. This Court has considered the evidence from the February 9, 1995, evidentiary hearing of Ducane's motion to disqualify, and the record, and finds the facts as follows:

Debtor was brought into bankruptcy by an involuntary petition filed under Chapter 7 of Title 11 United States Code (Bankruptcy Code). This adversary proceeding was filed by Plaintiff/Trustee as an action based upon preference under 11 U.S.C. § 547. This adversary proceeding has had substantial litigation between Plaintiff and Defendant since its inception April 8, 1991. During the pendency of this adversary proceeding, Trustee has retained its individual counsel Trenam, Kemker, Scharf, Barkin, Frye, O'Neill, and Mullins, P.A. (Trenam, Kemker) and Defendant (Ducane) has retained Ryberg, Goldstein, and Bolves, P.A. (RGB).

The impetus for this Motion for Disqualification of Plaintiff's counsel, almost four years after the case was filed, is based upon Trenam, Kemker's employment of an associate which was previously employed with RBG. Both periods of employment have been during the pendency of this adversary proceeding.

RGB employed Laura Prather (Prather) from February 1991 through March 1992. During Prather's employment with RGB, she had various contacts with Ducane's counsel and Ducane's treasurer. Prather signed and served Ducane's witness and document lists, Ducane's request for production, Ducane's answers to interrogatories, Ducane's notice

of serving answers to interrogatories, and Ducane's response to request for production.[1]

Testimony supports a finding the senior partner Marsha Ryberg of RGB delegated responsibilities to Prather which were first level of responsibility in the instant case. Prather's basic duties encompassed the legal research and drafting of Ducane's motion to dismiss. Although Ducane alleges Prather was privy to information protected by the attorney-client privilege and work product doctrine, there is no evidence specific confidences were transferred to Prather, or by her to Trenam, Kemker.

Upon leaving RGB in March 1992, Prather took employment with unrelated law firms for over two and one half years. During this period, neither Prather nor the firms in which she was associated were involved in the present adversary proceeding. In October 1994, Prather became an associate member of the Trenam, Kemker firm.

It is undisputed Trenam, Kemker has been counsel for Trustee since 1990. In addition, it is undisputed there has been substantial litigation between Trustee and Ducane during that time, which included four days of trial beginning in July 1993. The last day of this four day trial was scheduled for March 30, 1995, and both parties agreed the trial would be completed on that date.

Prior to Prather taking employment with Trenam, Kemker, John Goldsmith of Trenam, Kemper, and lead counsel for Trustee, discussed the possibility of conflict from her prior association with RGB. Upon hiring Prather, Trenam, Kemker instituted procedures to insure Prather had no involvement on any matters with Mr. Goldsmith or any involvement in the Ducane matters. Testimony reveals she has not discussed the case with any members of Trenam, Kemker, has not sought any involvement in any of the proceedings of the above-captioned adversary proceeding, and there has been a "Chinese wall" erected to protect Prather and Trenam, Kemker from obtaining any possible information obtained during Prather's association with RGB.

RGB offered testimony alleging Prather acquired confidential information in the form of discovery responses, a motion to dismiss, wire transfer research, and contact with Ducane's counsel and Ducane's treasurer. Finally, Ducane does not attempt to suggest Prather was any more than an associate involved in the initial stages of discovery.

## DISCUSSION

Ducane asserts the Florida Bar rules establish an absolute prohibition as to attorneys representation of a party in litigation where the attorney represented an adverse party in the same litigation. In other words, there is an absolute disqualification to "switching sides" during a pending matter,

---

1. Evidence at trial, in the form of time records, establishes the following work performed by Prather:

   a) On June 5, 1991, Prather drafted Ducane's motion to dismiss, performed legal research, and reviewed a letter from Ducane's South Carolina counsel;

   b) On June 6, 1991, Prather had a telephone conversation with Ducane's South Carolina counsel to discuss the filing of the motion to dismiss and information related to receiving wire transfer;

   c) On June 7, 1991, and June 12, 1991, Prather had a telephone conversation with Ducane's treasurer;

   d) On July 9, 1991, Prather had a telephone conversation with Ducane's South Carolina counsel, and thereafter, Prather drafted a pretrial statement;

   e) On September 23, 1991, Prather drafted Ducane's answer to the trustee's complaint;

   f) On September 23, 1991, Prather drafted Ducane's answer to the complaint;

   g) On October 3 and 4, 1991, Prather had a telephone conversation with Ducane's South Carolina counsel. These conversations regarded answers to interrogatories;

   h) On October 4, 1991, Prather drafted Ducane's exhibit and witness lists, Ducane's response to request for production of documents, and Ducane's notice of serving answers to interrogatories;

   i) On October 7, 1991, Prather received a letter from Ducane's South Carolina counsel regarding interrogatories and request for production;

   j) On October 23, 1991, Prather had a telephone conversation with Ducane's treasurer;

   k) On October 29, 1991, Prather had a telephone conversation with Ducane's South Carolina counsel; and,

   l) Finally, as the evidence supports, on November 15, 1991, Prather had a telephone conversation with John Goldsmith of Trenam Kemker, counsel for Trustee in this instant matter.

without regard to other factors. Florida Bar Rule 4–1.10 is central to the legal argument raised in Ducane's motion to disqualify.[2] That rule provides:

a) Imputed disqualification of all lawyers in a firm. While lawyers are associated in a firm, none of them shall knowingly represent a client when anyone of them practicing alone would be prohibited from doing so by Rules 4–1.7, 4–1.8(c), 4–1.9, or 4–2.2.

b) Former clients of newly associated associate lawyer. When a lawyer becomes an associate with a firm, the firm may not knowingly represent a person in the same or a *substantially related matter* in which that lawyer, or a firm with which the lawyer was associated, had previously represented a client whose interests *are materially adverse* to that person and about whom the lawyer had acquired information protected by Rules 4–1.6 and 4–1.9(b) *that is material to the matter.*[3] [emphasis added]

Rule 4–1.10(b) incorporates information that is protected by Rule 4–1.6 and Rule 4–1.9(b). Under Rule 4–1.6, a lawyer shall not reveal information relating to representation of a client, except as stated in subdivisions (b), (c), and (d), of that rule. This prohibition may be waived after disclosure to the client, and the client consents. Rule 4–1.6 has been held as a fundamental principal in the client-lawyer relationship, encouraging communication fully and frankly with a lawyer. As the comment to Rule 4–1.6 states, this fundamental principal encourages the public to seek legal counsel and to be confident that their communications will not be revealed.

Rule 4–1.9(b), which is also incorporated into Rule 4–1.10(b), precludes a lawyer from using information related to the representation of a former client to the disadvantage of that former client. Exceptions to this rule are to prevent a client from committing a crime, to prevent death or bodily harm, to serve the client's interest, as a defense to an action of a former client, or to comply with the rules of professional conduct. There is no question in the instant matter the exceptions to Rule 4–1.9(b) do not apply. In addition, there is no question an attorney must have acquired confidential information that is material to the matter, or necessarily used confidential information, to be governed by the rules set out above. *See* Rule 4–1.10(b).

The Florida Supreme Court has ruled "a lawyer's ethical obligations to former clients generally require disqualification of the lawyer's entire firm where any potential conflict arises." *Brotherhood Mutual Insurance Co. v. Nat'l Presto Industries, Inc.,* 846 F.Supp. 57, 59 (M.D.Fla.1994) (*Citing Castro v. State,* 597 So.2d 259, 260 (Fla.1992)).

■ Upon a showing there is an attorney-client relationship, there is a presumption there was a confidential relationship and confidential information was transferred to all members of a firm by the client. This is the first aspect of loyalty to a client.

■ The Eleventh Circuit Court of Appeals has applied a similar Alabama rule on professional conduct, and determined this presumption is irrebuttable. *Cox v. American Cast Iron Pipe Company,* 847 F.2d 725 (11th Cir.1988). This Court believes under similar circumstances, Florida law would require a similar finding. *Brotherhood Mutual,* 846 F.Supp. at 59. Thus, once the attorney-client relationship is established, there is an irrebuttable presumption the members of

---

**2.** There appears to be some conflict in the instant matter as regards which rule of professional conduct governs. This Court agrees with the analysis stated in the commentary of Rule 4–1.10, which explains when a lawyer moves from one firm to another, the situational conflict is governed by paragraph (b). "Paragraph (a) operates only among lawyers currently associated in a firm. When a lawyer moves from one firm to another, the situation is governed by paragraphs (b) and (c)." Comment to Rule 1.10. Disqualification of a subject lawyer, Prather in the instant case, comes under the purview of paragraph (b). *See also Nissan Motor Corp. v. Orozco,* 595 So.2d 240 (Fla. 4th DCA 1992); *Graham v. Wyeth Laboratories Division of American Home Products Corp.,* 906 F.2d 1419, 1422 (10th Cir.1990). Paragraph (c) would apply only if disqualification of RGB was sought, and has no application in the instant matter. *Id.*

**3.** Rule 4–1.10, Rules Regulating the Florida Bar (1995) (hereinafter Rules).

the firm have obtained confidential knowledge from the relationship.[4]  *Id.*

■ From an analysis of Rule 4–1.10(b), the rule requires the client's matter handled by the initial law firm to be "substantially related" to the matter being dealt with by the receiving law firm.  At this point in the analysis, a distinction should be noted.  The instant matter is not a "substantially related" matter, it is the "same" adversary proceeding.  Therefore, evidence establishes or rebuts the matters were substantially related.[5]  Evidence for or against an assertion a matter is "substantially related" is not a prerequisite where the matter is the same.  *Cf. State Farm Mutual Automobile Ins. Company v. K.A.W.*, 575 So.2d 630 (Fla.1991); *Junger Utility & Paving Company v. Myers*, 578 So.2d 1117 (Fla. 1st DCA 1989); *Kenn Air Corp. v. Gainesville–Alachua County Regional Airport Authority*, 593 So.2d 1219 (Fla. 1st DCA 1992); *see also Sears, Roebuck and Co. v. Stansbury*, 374 So.2d 1051 (Fla. 5th DCA 1979) (two separate lawsuits).  The instant case is a preference action in which Trenam, Kemker represents the Trustee, and is the same preference action Prather worked on while at RGB.

■ Equally as important, and consistently glossed over by others, is the requirement under Rule 4–1.10(b) that the matter which taints an associate attorney is adverse to the former client.  If there is no adversity, there is no policy consideration.  The need to protect the integrity of loyalty to a client is predicated upon removing instances which would cause apprehension in a client's expectation of confidences.  If the associate having an attorney-client relationship with a particular client, which is now an adverse client to

the associate's new firm, the expectation of confidences is significantly diminished.

However, analysis does not end with an irrebuttable presumption as to attorney-client confidences.  "The second aspect of loyalty to [a] client is the lawyer's obligation to decline subsequent representations involving positions adverse to a former client arising in [the same or] substantially related matters."  *The Florida Bar Amendments to Rules*, 605 So.2d 252, 333 (Fla.1992); *See Also Kenn Air Corp. v. Gainesville–Alachua County Regional Airport Authority*, 593 So.2d 1219 (Fla. 1st DCA 1992) (same counsel to adverse clients and similar matters); *Birdsall v. Crowngap, Ltd.*, 575 So.2d 231 (Fla. 4th DCA 1991).  "If a lawyer left [one] firm for another, the new affiliation would not preclude the firms involvement from continuing to represent clients with adverse interests in the same or related matters so long as the conditions of Rule 4–1.10(b) . . ., concerning confidentiality have been met."  *Florida Bar Rules*, 605 So.2d at 333.  This comment suggests the absence of an absolute rule which is advocated by Ducane.

■ The fact there is an attorney transfer, a showing the matters are the same or substantially related, and the matter is adverse, does not present another irrebuttable presumption that the new firm acquired confidential information concerning a prior attorney-client relationship.  Proof of the foregoing only allows the Court to impute knowledge for purposes of disqualification.  Once knowledge is imputed to the new firm, a critical inquiry must be made bottomed in Rule 4–1.10(b).  The imputed information to Trenam, Kemker, by the hiring of Prather, must be "material" to the matter.[6]

**4.** Notwithstanding the presumption of confidential knowledge, Ducane contends an irrebuttable presumption, coupled with a substantially related matter, is an absolute disqualification.  *See Duncan v. Merrill Lynch, Pierce, Fenner and Smith, Inc.*, 646 F.2d 1020 (5th Cir.1981).  It appears Ducane may assert another irrebuttable presumption arises once substantial relation is established by a movant.  The appearance of the second irrebuttable presumption is not found in the law.

**5.** The issue of "substantially related" is not to be confused with the confidential information

Prather is deemed to possess.  That issue is irrebuttable.  *See Brotherhood Mutual Ins. Co. v. Nat'l Presto Industries, Inc.*, 846 F.Supp. 57, 59 (M.D.Fla.1994); *Cox v. American Cast Iron Pipe Company*, 847 F.2d 725 (11th Cir.1988).  "Substantially related" clearly refers to whether the matter handled by the initial law firm coalesce with those matters in which the transferee firm is involved.

**6.** For example: suppose an associate, while employed with a firm, performs functions which deeply involve him in withholding tax matters.  The associate may be privy to confidential infor-

■ There is no question the attorney-client relationship existed since Prather was a member of RGB at the onset of representing Ducane. Because of the irrefutable presumption, confidential matters are presumed to have been passed to Prather. In addition, the matters dealt with by both law firms are the same. Plaintiff is the Trustee in a preference action against Defendant Ducane, and Prather's association with Trenam, Kemker supports a finding the prior and present representations are materially adverse. The confidential relationship which is deemed to have passed information from Ducane to Prather, is now imputed to Trenam, Kemker for purposes of disqualification, and such information is material to the present adversary proceeding.

It should be noted the evidence supports Prather did not actually transfer any confidential information. In fact, the evidence suggests the exact opposite. Trenam, Kemker set up a "Chinese wall" which prohibited transfer of information Prather may possess. However, the "Chinese wall," although commendable, is not adopted by Florida courts as relates to Rule 4–1.10(b). *DeBartolo v. Petrin*, 516 So.2d 6 (Fla. 2d DCA 1987). In addition, it appears once there are grounds for disqualification, corrective measures may not alleviate the problem. *See Ford v. Piper Aircraft Corp.*, 436 So.2d 305 (Fla. 5th DCA 1983) (representation of client and an adversary of client and attempt to remove conflict unsuccessful); *but see Nissan Motor Corp. v. Orozco*, 595 So.2d 240 (Fla. 4th DCA 1992) (disassociation of tainted associate satisfied the court conflict was removed).[7]

■ For the reasons set out above, the motion to disqualify Trenam, Kemker should be granted, but this Court does not find any basis for disqualification for reasonable fees and costs incurred to the time this Court disqualified Trenam, Kemker.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED Ducane Industries' Motion to Disqualify the Trenam, Kemker Law Firm be, and the same is hereby, granted without prejudice to Trenam, Kemker, Scharf, Barkin, Frye, O'Neill, and Mullins to seek fees and costs for its representation to March 31, 1995, and make application for same. It is further,

ORDERED, ADJUDGED AND DECREED Trustee shall have 30 days from the date of this Order to acquire new counsel.

DONE AND ORDERED.

---

mation by performing such functions as deposits, tax returns, and auditing of those tax liabilities. However, this knowledge and work in and of itself may not be material to a subsequent preference action in bankruptcy.

There are two additional considerations this Court recognizes, although not applicable in the instant matter. Timeliness is a factor to be considered in a motion to disqualify. *See Cox v. American Cast Iron Pipe Company*, 847 F.2d 725 (11th Cir.1988). In addition, a client may consent to the representation, after being fully apprised of the conflict. *Id.* Although these are factors to be considered in a motion to disqualify, they are not pertinent to the instant case.

**7.** The analysis in *Nissan* appears to be going in the same direction as the analysis above. However, for some reason unknown to this Court, the court in *Nissan* places credence on the fact the tainted associate is terminated. There does not appear to be any authority to cure a conflict that has arisen under Rule 4–1.10(b), by terminating association with a tainted lawyer.

Equally as troublesome is the possibility there may be different levels of analysis afforded partners as opposed to associates. It may be of little import, but Rule 4–1.10 is entitled "Newly Associated Associate Attorney."