944 So.2d 508 (2006)
HEALTH CARE AND RETIREMENT CORPORATION OF AMERICA, INC.; Manorcare Health Services, Inc., d/b/a Heartland Health Care, Petitioners,
v.
Peggy BRADLEY, as Personal Representative of the Estate of Buford Allen Fennell, Jr., Respondent.
No. 4D06-2653.
District Court of Appeal of Florida, Fourth District.
December 20, 2006.
*509 Christopher J. Kaiser and Sylvia H. Walbolt of Carlton Fields, P.A., St. Petersburg, and Barry A. Postman and Lee M. Cohen of Cole, Scott & Kissane, P.A., West Palm Beach, for petitioners.
Lynn G. Waxman of Lynn G. Waxman, P.A., West Palm Beach, and Daniel G. Williams of Gordon & Doner, P.A., Palm Beach Gardens, for respondent.

ON MOTION FOR REHEARING
PER CURIAM.
The respondent to this petition for writ of certiorari moved for rehearing which we treat as a motion for clarification and grant. We withdraw our prior opinion in this case and replace it with the following.
The petitioner, Health Care and Retirement Corporation of America ("Manor Care"), seeks certiorari review of a lower court order denying its motion to disqualify opposing counsel. We grant this petition for the reasons that follow, lift the stay that was previously imposed, and remand for further proceedings consistent herein.
The underlying lawsuit involves allegations of neglect at a nursing home that purportedly led to the death of a resident. The complaint sought relief, in part through chapter 400, Florida Statutes, for incidents that took place from January 25, 2002 to September 13, 2005 at a Boca Raton facility operated by Manor Care. The respondent, Peggy Bradley, as personal representative of the decedent's estate, hired the law firm of Gordon & Doner, P.A. to pursue her case, filed by complaint dated August 24, 2005.
From February 2001 to December 2004, Scott Fischer represented Manor Care, through his association with the law firm of Cole, Scott & Kissane, P.A. ("Cole Scott"). It is undisputed that during this *510 period, Fischer represented Manor Care in defense of nursing home litigation and in cases involving both similar allegations and the same facility.[1] At the end of December 2004, Fischer left Cole Scott and the next week began working for Gordon & Doner. Fischer is now actively involved in litigating Bradley's suit against his former client, Manor Care. As a result, Manor Care filed a motion to disqualify Fischer and Gordon & Doner, as a consequence of Fischer's association with the firm.
The lower court held an evidentiary hearing on the matter, wherein several depositions were read into the record and Fischer testified on behalf of Gordon & Doner. Manor Care argued that Fischer should be disqualified from representing Bradley due to Bar Rule 4-1.9 and then Gordon & Doner should be disqualified due to Fischer's association with the firm, pursuant to Bar Rule 4-1.10. Gordon & Doner's primary argument against disqualification was that Fischer did not receive any confidential information while representing Manor Care for four years. In denying the motion, the lower court wrote:
[Manor Care] seeks to disqualify Mr. Fischer, arguing he was fully apprised of Manor Care's internal strategies in handling the types of claims in this suit; he was supplied confidential information about the operations of Manor Care facilities as well as specific internal claim evaluations and defense strategies for cases such as this.
Manor Care has, however, failed to show clearly and convincingly that the challenged legal representation would interfere with the fair and impartial administration of justice. Rule Regulating the Florida Bar 4-1.6 provides that the attorney's duty of confidentiality continues even after the termination of the attorney-client relationship. During the course of Mr. Fischer's representation of Manor Care while at Cole, Scott, no confidences were revealed to him which were material to this case. Manor Care has, thus, failed to carry its burden of showing that the newly associated attorney acquired confidential information during his prior representation of the client in the same or substantially related matter. Furthermore, there is no evidence that Mr. Fischer has used or intends to use any confidence that he learned in his representation of Manor Care.
The order does not reveal whether the lower court applied, or intended to apply, either Rule 4-1.9 or Rule 4-1.10 to the facts of this case, thus complicating our review.
A petition for writ of certiorari is the appropriate method of challenging the denial of a motion to disqualify opposing counsel. See Campbell v. Am. Pioneer Sav. Bank, 565 So.2d 417 (Fla. 4th DCA 1990) (granting certiorari relief where the lower court incorrectly denied a motion to disqualify opposing counsel). As in any other certiorari petition, the proper review is premised upon whether the lower court departed from the "essential requirements of law which may result in prejudice that cannot be fully rectified by plenary appeal." Gen. Accident Ins. Co. v. Borg-Warner Acceptance Corp., 483 So.2d 505, 506 (Fla. 4th DCA 1986).
Cases which seek the disqualification of a party's chosen counsel present complicating issues that oftentimes result in conflict between important rights: (1) the right to choose one's own counsel, and (2) the protection of the judicial system's appearance of fairness. See Campbell, 565 So.2d at *511 417-18; see also Kusch v. Ballard, 645 So.2d 1035 (Fla. 4th DCA 1994); Coral Reef of Key Biscayne Developers, Inc. v. Lloyd's Underwriters at London, 911 So.2d 155, 157 (Fla. 3d DCA 2005) ("[M]otions for disqualification are viewed with skepticism because disqualification impinges on a party's right to employ a lawyer of choice. . . . Since the remedy of disqualification strikes at the heart of one of the most important associational rights, it must be employed only in extremely limited circumstances."). "Like so many other ethical considerations in the practice of law, perceptions are of the utmost importance. Thus, how much of an advantage, if any, one party may gain over another we cannot measure. However, the possibility that such an advantage did accrue warrants resort to this drastic remedy for the sake of the appearance of justice, if not justice itself, and the public's interest in the integrity of the judicial process." Gen. Accident, 483 So.2d at 506. On the other hand, we have expressly noted that the need to protect the integrity of the legal system is balanced by the fact "[d]isqualification of a party's chosen counsel is an extraordinary remedy and should only be resorted to sparingly." Singer Island, Ltd. v. Budget Constr. Co., 714 So.2d 651, 652 (Fla. 4th DCA 1998); Gen. Accident, 483 So.2d at 506. Thus, a decision such as this is not taken lightly and all factors must be considered to balance the two competing interests.
Depending upon the circumstances of the case, disqualification of an opposing counsel is controlled, generally, by the above-noted prevailing interests in justice and individual choice of representation, and specifically, by Bar Rules 4-1.9 and 4-1.10. Bar Rule 4-1.9 reads:
A lawyer who has formerly represented a client in a matter shall not thereafter:
(a) represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent; or
(b) use information relating to the representation to the disadvantage of the former client except as rule 4-1.6 would permit with respect to a client or when the information has become generally known.
R. Regulating Fla. Bar 4-1.9. Florida courts have noted the application of this Bar Rule creates an "irrefutable presumption that confidences were disclosed" between the client and the attorney. Gaton v. Health Coal., Inc., 745 So.2d 510, 511 (Fla. 3d DCA 1999); see also Solomon v. Dickison, 916 So.2d 943, 945 (Fla. 1st DCA 2005) (quoting Gaton); Key Largo Rest., Inc. v. T.H. Old Town Assocs., Ltd., 759 So.2d 690, 693 (Fla. 5th DCA 2000) ("[O]nce an attorney-client relationship is shown, an irrefutable presumption arises that confidences were disclosed to the attorney, and the only remaining requirement is a showing that the current case involves the same subject matter or is substantially related to the matter in which the lawyer represented the moving party."). We have noted, in Nissan Motor Corp. in U.S.A. v. Orozco, 595 So.2d 240, 242 (Fla. 4th DCA), rev. denied, 605 So.2d 1265 (Fla.1992), that Bar Rule 4-1.9 applies where a direct attorney-client relationship exists and the subject matter is the same or substantially related, and if that is found, the irrefutable presumption shall be applied.
Of course, disqualification is not required merely because the irrefutable presumption of confidences is in place. Instead, the party moving to disqualify opposing counsel must also show that "the matter in which the law firm subsequently *512 represented the interest adverse to the former client is the same matter or substantially similar to the matter in which it represented the former client." Junger Util. & Paving Co. v. Myers, 578 So.2d 1117, 1119 (Fla. 1st DCA 1989); see also State Farm Mut. Auto. Ins. Co. v. K.A.W., 575 So.2d 630, 633 (Fla.1991) (noting the second factor for disqualifying opposing counsel is showing the current case is the "same or substantially related to the matter[s]" in the former attorney-client relationship). We wrote, in Campbell, that "[b]efore a client's former attorney can be disqualified from representing adverse interests, it must be shown that the matters presently involved are substantially related to the matters in which prior counsel represented the former client." 565 So.2d at 417.
In the order now before us, the lower court determined Manor Care failed to carry its burden, possibly to the level of clear and convincing evidence, to show that Fischer received confidential information from the client. This was error, as the law required the trial court to apply the irrefutable presumption that confidences were divulged by Manor Care to Fischer. See Junger, 578 So.2d at 1119 ("the former client need show only that an attorney-client relationship existed, thereby giving rise to the irrefutable presumption that confidences were disclosed during the course of that relationship"). This "irrefutable presumption" is critical in such cases because it "protects the client by not requiring disclosure of confidences previously given to the attorney" to prove that such confidences were disclosed. K.A.W., 575 So.2d at 634.
The comments to Bar Rule 4-1.9 provide further guidance as to the purpose of the irrefutable presumption:
In the case of an organizational client, general knowledge of the client's policies and practices ordinarily will not preclude a subsequent representation; on the other hand, knowledge of specific facts gained in a prior representation that are relevant to the matter in question ordinarily will preclude such a representation. A former client is not required to reveal the confidential information learned by the lawyer in order to establish a substantial risk that the lawyer has confidential information to use in the subsequent matter. A conclusion about the possession of such information may be based on the nature of the services the lawyer provided the former client and information that would in ordinary practice be learned by a lawyer providing such services.
R. Regulating Fla. Bar 4-1.9 (comments) (emphasis supplied). It would appear to defeat the confidential nature of the information if the former client were required to prove what confidential information was revealed to its former attorney. This is especially true if the level of proof is the exceedingly high standard of "clear and convincing evidence."
Gordon & Doner argue that the irrefutable presumption should not apply to the information Fischer acquired during his representation of Manor Care because Bar Rule 4-1.10 guides this case. However, the very language of this Bar Rule rejects this assumption. Bar Rule 4-1.10, in applicable part, reads:
(b) Former Clients of Newly Associated Lawyer. When a lawyer becomes associated with a firm, the firm may not knowingly represent a person in the same or a substantially related matter in which that lawyer, or a firm with which the lawyer was associated, had previously represented a client whose interests are materially adverse to that person and about whom the lawyer had acquired *513 information protected by rules 4-1.6 and 4-1.9(b) that is material to the matter.
R. Regulating Fla. Bar 4-1.10. This rule applies to the new firm itself, and not to the newly associated lawyer. See Nissan, 595 So.2d at 242. Where the conflicted attorney was fired by the new firm, this court applied Bar Rule 4-1.10, but noted Bar Rule 4-1.9 would have applied had the conflicted attorney still been associated with the firm. Id. In the instant case, Fischer is still associated with Gordon & Doner, thus Nissan is distinguishable and Bar Rule 4-1.10 would not apply to the determination of whether Fischer should be disqualified.
Because the lower court erred in failing to apply Bar Rule 4-1.9, and thus failed to apply the irrefutable presumption, we must grant relief and quash the order below. We, however, do not make any determination as to whether Manor Care has made a sufficient showing of the second factor needed to disqualify its former lawyer: the former representation was "in the same or a substantially related matter." R. Regulating Fla. Bar 4-1.9(a). Upon remand, the lower court may hold any additional hearings it deems necessary and allow any additional discovery that would enable it to make any additional findings of fact, and conclusions of law, that will decide the motion to disqualify.
Petition Granted.
STONE, FARMER and SHAHOOD, JJ., concur.
NOTES
[1] However, the representation of the Boca Raton facility did not involve the same type of negligence allegations at issue in the instant proceedings.