In re Wolf Arbin WEINHOLD, Debtor.

No. 8:94–bk–6261–PMG.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

July 25, 2007.

Russell M. Blain, Stichter, Riedel, Blain & Prosser, Tampa, FL, for Debtor.

## ORDER ON EMERGENCY MOTION TO DISQUALIFY COUNSEL FOR DEFENDANTS DOUG SMITH AND CPP

PAUL M. GLENN, Chief Judge.

**THIS CASE** came before the Court to consider the Petitioners' Pro Se Emergen-cy Motion to Disqualify Counsel for Defendants Doug Smith and CPP. The Motion was filed by Michael R. Presley, Esq. and Cynthia J. Presley (Presley).

In the Motion, Presley seeks the entry of an order disqualifying and all co-counsel who represent Douglas Smith (Smith) and Carolina Preservation Properties, Inc. (CPP) in their "Defendants' Objections to Compromise Motion."

### Background

On June 27, 1994, the Debtor, Wolf Arbin Weinhold, filed a petition under Chapter 7 of the Bankruptcy Code. A Final Decree was entered, and the case was closed in 1998. The case was reopened in October of 2000 for the purpose of administering assets that allegedly had been concealed from the Chapter 7 Trustee.

On November 28, 2001, the Trustee in the Chapter 7 case filed a Complaint against Smith, CPP, and the Debtor. (Adv. No. 01–872).

Robert L. Rocke, Esquire, (Rocke) has represented Smith and CPP throughout the pendency of the adversary proceeding.

The adversary proceeding is extensive and complex. Three days of trial were held in November of 2003. The trial was continued and the parties attempted on several occasions to reach settlement by mediation. When it appeared that mediation was at an impasse, the trial was scheduled to continue for an eight day period commencing on February 5, 2007.

On February 2, 2007, the Trustee filed an Emergency Motion to Approve Compromise with Debtor Wolf Arbin Weinhold. (Doc. 215). A copy of the Settlement Agreement was attached to the Motion as Exhibit A. The parties to the Settlement Agreement are the Trustee and the Debtor.

On February 23, 2007, Smith and CPP filed an Amended Objection to the Compromise Motion. (Doc. 219). The Amended Objection was prepared by the law firm of GrayRobinson, P.A., on behalf of Smith and CPP.

On February 26, 2007, Presley filed the Emergency Motion to Disqualify Counsel for Defendants Doug Smith and CPP that is currently under consideration. (Doc. 220).

In the Emergency Motion, Presley contends that he had retained GrayRobinson, P.A. (GrayRobinson) to represent him in 2001, that he had engaged in privileged communications with GrayRobinson, and that GrayRobinson's present assertion of the Objection to the Settlement Agreement is "in direct opposition" to Presley's rights.

The following documents are attached to Presley's Emergency Motion:

1. A Proof of Claim in the amount of $840,361.26 signed by Presley. The Claim was filed in the Chapter 7 case on February 26, 2001, and was assigned Claim Number 19. To support the amount asserted, Presley attached to the Claim (1) a letter agreement dated November 26, 1998, between Presley and the Debtor regarding the "Property Known as Wolfs' Lair, Henderson County, North Carolina," and (2) a list of "Overall Expenses of North Carolina Project."

2. A letter from a secretary at GrayRobinson to Presley dated March 1, 2001. The letter stated that, as Presley requested, the Claim had been filed with the Court, and that a file-stamped copy of the Claim was enclosed.

3. A Statement from GrayRobinson to Presley, dated March 6, 2001, for services rendered in the amount of $257.50. According to the Statement, the services were provided on February 25 and February 26, 2001, and included a review of certain documents and a letter agreement provided by Presley, a telephone conference with Presley regarding the documents, a review of the rules regarding administrative claims, review of the case docket, a further review of the claim before filing, and the preparation of a letter to Presley "regarding administrative claimant status."

4. A letter from Presley to GrayRobinson dated March 12, 2001. In the letter, Presley wrote:

On behalf of myself and my wife, Cynthia, I would like to express my sincere thanks for the excellent services that both you and you [sic] firm have provided for us in this matter. Your assistance has been a blessing in helping to secure our rights against the debtor. Of course, I will continue to keep you advised as to the progress of this litigation.

... I look forward to the day that we can meet and further discuss the issues, especially the one pertaining to whether these listed items can be reclassified as administrative expenses rather than as a simple claim against the Debtor....

5. A copy of a check from Cynthia Presley to GrayRobinson dated March 12, 2001, in the amount of $257.50 in payment of the March 6 statement for services rendered.

6. A Statement from GrayRobinson to Presley dated July 16, 2001, for services and expenses in the total amount of $26.34.

7. A check from Presley to GrayRobinson dated July 30, 2001 in the amount of $26.34, in payment of the July 16 statement.

In view of its prior representation of Presley, as demonstrated by the documents described above, Presley contends that GrayRobinson's current representation of

Smith and CPP is prohibited by the Rules Regulating the Florida Bar, and that GrayRobinson should be disqualified from further representation in this case.

On March 13, 2007, GrayRobinson filed a Verified Response to Disqualification Motion. (Doc. 224).

In the Response, GrayRobinson acknowledges its prior representation of Presley. It acknowledges, for example, that "the Firm formerly maintained a representation (the 'Former Representation') of the Presleys for the purpose of reviewing a proof of claim...." (Doc. 224, ¶¶ 11–12).

In the Response, GrayRobinson further asserts that at the time their representation of CPP commenced, the attorneys at the firm had no recollection of the former representation, and at this time, apart from their review of the material filed by the Presleys, they continue to have no personal knowledge or recollection regarding the former representation. (Doc. 224, ¶ 12). According to GrayRobinson, the scope of the representation was "extraordinarily limited," and the attorneys spent a total of only two hours on the case. (Doc. 224, ¶ 13).

Finally, GrayRobinson contends that:

Neither [the attorneys] nor the Firm as a whole, have any information, documentation, personal knowledge, or other resources in their possession, ownership, or control that could in any way be utilized from the Former Representation in furtherance of the representation of the Clients [Smith and CPP]. Moreover, the review of a proof of claim many years ago is not relevant in any respect to the scope of work being done by the Firm for the Clients at this time.

(Doc. 224, ¶ 16). Consequently, GrayRobinson contends that it should not be disqualified from representing Smith and CPP, since it did not receive any confidential information from Presley in the prior representation, since it does not possess any advantage in the current litigation as a result of the prior representation, and since its current representation will not prejudice Presley. (Doc. 224, pp. 6–7).

Presley filed a Reply to GrayRobinson's Response on April 4, 2007. (Doc. 231).

## Discussion

The record in this case clearly establishes that GrayRobinson represented Presley in 2001 in connection with the filing of a Proof of Claim in the Chapter 7 case of Wolf Arbin Weinhold. The record includes copies of statements issued by GrayRobinson to Presley, copies of correspondence between GrayRobinson and Presley, and copies of checks written by Presley in payment for GrayRobinson's services. (Doc. 220).

GrayRobinson does not dispute the existence of the attorney-client relationship. On the contrary, GrayRobinson acknowledges that it previously represented Presley by assisting him with his Proof of Claim in the bankruptcy case. (Doc. 224, ¶¶ 11–13).

The conduct of attorneys appearing in this Court is governed by the Rules of Professional Conduct and other ethical limitations or requirements then governing the professional behavior of members of The Florida Bar. (Local Rule 2090–2). Rule 4–1.9 of the Rules Regulating the Florida Bar governs conflicts arising from the prior representation of a client:

**Rule 4–1.9. Conflict of Interest; Former Client**

A lawyer who has formerly represented a client in a matter shall not thereafter:

(a) represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the for-

mer client unless the former client gives informed consent; or

(b) use information relating to the representation to the disadvantage of the former client except as rule 4–1.6 would permit with respect to a client or when the information has become generally known.

R. Regulating Fla. Bar 4–1.9.

■ The Florida Supreme Court has addressed the standards to be used in evaluating whether an attorney or firm should be disqualified on the basis of this rule. A person seeking the disqualification of an attorney under Rule 4–1.9 is required to show "that (1) an attorney-client relationship existed, thereby giving rise to an irrefutable presumption that confidences were disclosed during the relationship, and (2) the matter in which the law firm subsequently represented the interest adverse to the former client was the same or substantially related to the matter in which it represented the former client." *State Farm Mutual Automobile Insurance Company v. K.A.W.*, 575 So.2d 630, 633 (Fla.1991). See also *Anderson Trucking Service, Inc. v. Gibson*, 884 So.2d 1046 (Fla. 5th DCA 2004).

### A. An attorney-client relationship

Pursuant to the first prong of the test set forth in *K.A.W.*, therefore, a person seeking the disqualification of an attorney under Rule 4–1.9 must show the existence of a prior attorney-client relationship.

In this case, as shown above, the existence of the prior attorney-client relationship between GrayRobinson and Presley is not disputed. GrayRobinson acknowledges its former representation of Presley in connection with the filing of Presley's claim in the bankruptcy case. (Doc. 224).

■ Further, the law "does not require a long-term or complicated attorney/client relationship to fulfill the first prong of the test for disqualification." *Brotherhood Mutual Insurance Company v. National Presto Industries, Inc.*, 846 F.Supp. 57, 59 (M.D.Fla.1994). Consequently, the contention that the scope of the representation was "extraordinarily limited" does not alter the analysis under Rule 4–1.9.

■ On the contrary, in "determining whether an attorney/client relationship existed, the court may focus on the subjective expectation of the client that he is seeking legal advice." *Brotherhood*, 846 F.Supp. at 59.

In this case, Presley wrote GrayRobinson a letter on March 12, 2001, in which he thanked the firm for its assistance in "helping to secure our rights against the debtor." The claim filed in the bankruptcy case was substantial, over $840,000, and in the letter Presley referred to potential future meetings to "further discuss the issues," such as the entitlement of Presley's claim to administrative expense status. (Doc. 220). The letter clearly reflects Presley's understanding that he had sought legal advice from GrayRobinson in connection with the filing of his claim, and expressed the expectation that the representation would continue.

Given the documentation furnished by Presley, and GrayRobinson's acknowledgement of the prior representation, it is clear that Presley established the existence of an attorney-client relationship with GrayRobinson in 2001.

■ Once the existence of an attorney-client relationship is established, an "irrefutable presumption" arises that confidences were disclosed during the course of the relationship. *State Farm v. K.A.W.*, 575 So.2d at 633.

■ GrayRobinson assures the Court that it has no information that could be

used to the disadvantage of Presley. The Court recognizes this assurance, and attributes no inappropriate motives to GrayRobinson. However, "[u]pon a showing there is an attorney-client relationship, there is a presumption there was a confidential relationship and confidential information was transferred to all members of a firm by the client." *In re Outdoor Products Corp.*, 183 B.R. 645, 649 (Bankr. M.D.Fla.1995). The presumption is irrebuttable. *In re Outdoor Products Corp.*, 183 B.R. at 649. See also *Health Care and Retirement Corporation of America, Inc. v. Bradley*, 944 So.2d 508, 511 (Fla. 4th DCA 2006).

"The presumption acknowledges the difficulty of proving that confidential information useful to the attorney's current client was given to the attorney. It also protects the client by not requiring disclosure of confidences previously given to the attorney." *State Farm v. K.A.W.*, 575 So.2d at 634.

■ Since the existence of a prior attorney-client relationship was established in this case, therefore, an irrefutable presumption arose that GrayRobinson received confidential information from Presley during the course of the representation. The presumption was created regardless of the extent or complexity of the services provided by GrayRobinson.

**B. Substantially related**

In addition to the existence of the prior attorney-client relationship, a person seeking to disqualify an attorney must also show that "the matter in which the law firm subsequently represented the interest adverse to the former client is the same matter or substantially similar to the matter in which it represented the former client." *Health Care and Retirement Corporation v. Bradley*, 944 So.2d at 511–

12(citing *State Farm v. K.A.W.*, 575 So.2d at 633).

"The second prong of the test for disqualification of counsel requires a showing of a substantial relationship between the prior and current matters." *Brotherhood Mutual Insurance Company v. National Presto*, 846 F.Supp. at 59.

No uniform test has evolved to determine whether the prior matter and the current matter are substantially related. See, for example, *McPartland v. ISI Investment Services, Inc.*, 890 F.Supp. 1029, 1031 (M.D.Fla.1995)(the term "substantially related" refers to whether the previous matters are akin to the present action in a way that a reasonable person would understand as important to the issues) and *In re Outdoor Products Corp.*, 183 B.R. at 649 n. 5(the term "substantially related" refers to whether the prior matters "coalesce with" the current matters).

■ Accordingly, "whether the two matters are substantially related depends upon the specific facts of each particular situation or transaction." *The Florida Bar v. Dunagan*, 731 So.2d 1237, 1240 (Fla.1999).

■ In this case, the Court finds that the subject matter involved in GrayRobinson's representation of Presley is "substantially related" to the subject matter involved in its representation of Smith and CPP. Further, it is also clear that the initial interest represented by GrayRobinson in this bankruptcy case (Presley's interest) is adverse to the current interest represented by the firm in the case (Smith and CPP's interest).

The Debtor filed a petition under Chapter 7 of the Bankruptcy Code on June 27, 1994. A Final Decree was entered, and the case was closed in 1998. On October 20, 2000, the case was reopened for the purpose of administering certain assets

that allegedly had been concealed from the Chapter 7 Trustee.

Presley asserts that he is a creditor in the reopened Chapter 7 case. As shown above, GrayRobinson assisted Presley in the filing of a Proof of Claim in the amount of $840,361.26, on February 26, 2001. Two supporting documents are attached to the Claim: (1) a letter agreement dated November 26, 1998, between Presley and the Debtor regarding the "Property Known as Wolfs' Lair, Henderson County, North Carolina," and (2) a list of "Overall Expenses of North Carolina Project."

The Chapter 7 Trustee has not objected to Presley's claim as of the date of this Order.

In the reopened Chapter 7 case, the Trustee has attempted to administer and liquidate the primary asset of the estate for the benefit of its creditors. The primary asset stems from the interests of the Debtor in a Limited Partnership. In turn, the primary asset of the Limited Partnership (Wolfs' Lair, Ltd.) consists of approximately 1,400 acres of real property located in North Carolina.

In an effort to administer the asset, the Trustee filed a Complaint against the Debtor, Smith, and CPP on November 28, 2001. (Adv. No. 01–872). The adversary proceeding is extensive and complex. Three days of trial were held in November of 2003. The trial was continued and the parties attempted on several occasions to reach settlement by mediation. When it appeared that mediation was at an impasse, the trial was scheduled to continue for an eight day period commencing on February 5, 2007.

On February 2, 2007, the Trustee filed an Emergency Motion to Approve Compromise. (Doc. 215). In the Motion, the Trustee requests authorization to enter into and consummate a settlement with the Debtor pursuant to a written Settlement Agreement that is attached to the Motion.

The Settlement Agreement provides, among other terms, that Wolfs' Lair, Ltd. will deliver a Promissory Note to the Trustee in the amount of $2,500,000.00 upon the conditions stated in the Agreement. The proceeds received by the Trustee from the Promissory Note, of course, would fund the payment of valid claims in the Chapter 7 case, including the claim held by Presley, if allowed.

The Settlement Agreement also provides that the Trustee would transfer any claims that she has against Presley to Wolfs' Lair, Ltd. (Settlement Agreement, ¶ 3).

Smith and CPP, through GrayRobinson, filed an Objection and Amended Objection to the compromise represented by the Settlement Agreement. (Docs.218, 219). In the Objection, Smith and CPP ask the Court to deny the Trustee's Motion and disapprove the Settlement Agreement.

No other parties or entities have objected to the proposed compromise.

Based on the foregoing, the Court is satisfied that Presley has an interest in the successful conclusion of the compromise between the Trustee and the Debtor. Specifically, for example, Presley has asserted a Claim in the Chapter 7 case that could be paid from funds received by the Trustee if the Settlement is consummated.

The Proof of Claim asserted by Presley was reviewed and filed by GrayRobinson in 2001.

GrayRobinson currently represents Smith and CPP, parties who actively oppose the activities of the Trustee, and who have objected to the Trustee's proposed Settlement Agreement with the Debtor. By virtue of its representation of Smith and CPP, GrayRobinson is involved in a matter that is "substantially related" and

adverse to its prior representation of Presley.

Presley's Emergency Motion to Disqualify Counsel should be granted as to GrayRobinson, and GrayRobinson should be disqualified from any further representation of Smith and CPP in this bankruptcy case.

### Conclusion

Presley initiated this contested matter by filing an Emergency Motion to Disqualify Counsel for Defendants Doug Smith and CPP. In the Motion, Presley seeks the entry of an order disqualifying all co-counsel who executed the "Defendants' Objection to Compromise Motion."

The Court finds that the Emergency Motion should be granted as to GrayRobinson, P.A. and all attorneys associated with the law firm.

First, the record establishes that a prior attorney-client relationship existed between Presley and GrayRobinson. Consequently, an irrefutable presumption was created that confidences were disclosed in the course of the relationship.

Second, the record establishes that the matter involved in GrayRobinson's representation of Presley is substantially related to the matter involved in its representation of Smith and CPP. Further, the interest currently represented by GrayRobinson (Smith and CPP) is clearly adverse to Presley's interest in the Chapter 7 case.

Accordingly, pursuant to Rule 4–1.9 of the Rules Regulating the Florida Bar, GrayRobinson should not represent Smith and CPP in this case, and Presley's motion should be granted as to GrayRobinson.

Presley's Motion should not be granted, however, as to Robert Rocke, Esquire. The Court conducted a preliminary hearing on the Emergency Motion to Disqualify Counsel on February 28, 2007. At that hearing, for the reasons stated on the record, the Court determined that the Motion should be denied to the extent that Presley seeks the disqualification of Robert L. Rocke, Esquire, from further participation in the case.

Accordingly:

**IT IS ORDERED** that:

1. The Emergency Motion to Disqualify Counsel for Defendants Doug Smith and CPP, filed by Michael R. Presley, Esquire and Cynthia J. Presley, is granted to the extent that it seeks the disqualification of GrayRobinson, P.A., and GrayRobinson, P.A., and all attorneys associated with GrayRobinson, P.A., are disqualified from any further representation of Douglas Smith or Carolina Preservation Partners, Inc. in this or any related case.

2. The Emergency Motion to Disqualify Counsel for Defendants Doug Smith and CPP is denied to the extent that Presley seeks the disqualification of Robert L. Rocke, Esquire, from representing Douglas Smith and Carolina Preservation Partners, Inc. in this or any related case.