575 So.2d 630 (1991)
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Petitioner,
v.
K.A.W., Etc., et al., Respondents.
CONTINENTAL CASUALTY COMPANY, Petitioner,
v.
K.A.W., Etc., et al., Respondents.
INTERSTATE FIRE & CASUALTY COMPANY, Petitioner,
v.
K.A.W., Etc., et al., Respondents.
Nos. 75805, 75829 and 75869.
Supreme Court of Florida.
January 18, 1991.
Rehearings Denied March 18, 1991.
Richard A. Sherman and Rosemary B. Wilder of the Law Offices of Richard A. Sherman, P.A., Fort Lauderdale, for petitioner, State Farm Mut. Auto. Ins. Co.
Steven R. Berger of Wolpe, Leibowitz, Berger & Brotman, Miami, and George, Hartz & Lundeen, Fort Lauderdale, for petitioner, Continental Cas. Co.
Debra J. Snow and Robert M. Klein of Stephens, Lynn, Klein & McNicholas, P.A., Miami, for petitioner, Interstate Fire & Cas. Co.
Larry Klein of Klein & Walsh, P.A., West Palm Beach, Sheldon J. Schlesinger, P.A., and Fred J. Berman of Fred J. Berman, *631 P.A., Fort Lauderdale, for respondents.
GRIMES, Justice.
We review State Farm Mutual Automobile Insurance Co. v. K.A.W., 557 So.2d 601 (Fla. 4th DCA 1990), on the basis of conflict with Junger Utility & Paving Co. v. Myers, 14 F.L.W. 2650 (Fla. 1st DCA, Nov. 15, 1989); Ford v. Piper Aircraft Corp., 436 So.2d 305 (Fla. 5th DCA 1983), review denied, 444 So.2d 417 (Fla. 1984); and Sears, Roebuck & Co. v. Stansbury, 374 So.2d 1051 (Fla. 5th DCA 1979). We have jurisdiction. Art. V, § 3(b)(3), Fla. Const.
David Wilkerson was driving a rental car in which his wife and infant daughter were passengers when it was struck by another car. The Wilkersons retained the law firm of Sheldon J. Schlesinger, P.A. (Schlesinger firm) and filed suit against the driver and owner of the other vehicle and others for injuries suffered by the three of them in the accident. The action included a count against petitioner State Farm Mutual Automobile Insurance Company (State Farm), the Wilkersons' insurer, for uninsured motorist coverage. The Wilkersons also filed a separate malpractice action against various health care providers for alleged negligent treatment of their daughter after the accident. The Schlesinger firm represented the Wilkersons in the malpractice action.
After the personal injury action had proceeded for approximately one year, the Wilkersons added new defendants, including petitioners Interstate Fire and Casualty Company and Continental Casualty Company, which had issued uninsured motorist insurance to Wilkerson's employer. The following year, the Wilkersons' attorneys determined that David Wilkerson's negligence may have contributed to the automobile accident. Thereupon, Mr. Wilkerson discharged the Schlesinger firm as his counsel in the personal injury action and retained a former member of the Schlesinger firm as new counsel. Shortly thereafter, Mrs. Wilkerson and her daughter filed a second amended complaint in that action, adding David Wilkerson as a defendant. The Schlesinger firm continued to represent Mrs. Wilkerson and the daughter in that action, and Mr. Wilkerson consented to be sued up to the limits of his insurance coverage. The firm also continued to represent all three Wilkersons in the medical malpractice action.
Asserting their exposure as liability insurers of Mr. Wilkerson, each of the petitioners filed motions seeking the disqualification of the Schlesinger firm in the personal injury action. Petitioners objected to the potential for the Schlesinger firm to use confidential information gained during the course of the prior representation of Mr. Wilkerson in this action against him. In opposition to the motion, David Wilkerson filed an affidavit stating that he did not consider anything he discussed with Sheldon Schlesinger privileged because he had disclosed everything in his deposition and he did not feel that Mr. Schlesinger's representation of his wife and daughter disadvantaged him in any way. Mrs. Wilkerson also submitted an affidavit in which she stated that she and her daughter would be prejudiced if the Schlesinger firm were required to withdraw.
The trial court refused to disqualify the Schlesinger firm, finding that the petitioners lacked standing to request disqualification in the face of Mr. Wilkerson's consent to the firm's representation of his wife and child. In addition, the court found that the petitioners failed to show clearly and convincingly that they would be prejudiced or that the continued representation would interfere with the fair and impartial administration of justice. The Fourth District Court of Appeal denied the insurers' petitions for writ of certiorari, finding no proof of substantial prejudice or circumstances calling into question the fair and efficient administration of justice.
While not addressed by the majority opinion below, we shall first discuss the question of the petitioners' standing. The Wilkersons contend that an attorney may not be disqualified where the former client has consented to the representation. See, e.g., Cox v. American Cast Iron Pipe Co., 847 F.2d 725 (11th Cir.1988); Trust Corp. *632 v. Piper Aircraft Corp., 701 F.2d 85 (9th Cir.1983); In re Yarn Processing Patent Validity Litig., 530 F.2d 83 (5th Cir.1976). The rule urged by the Wilkersons is based on the premise that rules governing attorney conduct are intended for the protection of the client, who may either explicitly or implicitly waive that protection. On the other hand, the petitioners argue that they have standing because as insurance companies they will be liable for the payment of any judgment against David Wilkerson in this action. See General Dev. Corp. v. Kirk, 251 So.2d 284 (Fla.2d DCA 1971) (standing is that sufficient interest in the outcome of litigation which will warrant the court's entertaining it).
The ethical principle at issue is an attorney's duty to maintain the confidences of his client. That principle is embodied in two rules of professional conduct. Rule Regulating The Florida Bar 4-1.6(a) provides that "[a] lawyer shall not reveal information relating to representation of a client ... unless the client consents after disclosure to the client." The duty of confidentiality continues after termination of the attorney-client relationship. See Comment to rule 4-1.6.
Rule Regulating The Florida Bar 4-1.9 provides:
A lawyer who has formerly represented a client in a matter shall not thereafter:
(a) Represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation; or
(b) Use information relating to the representation to the disadvantage of the former client except as rule 4-1.6 would permit with respect to a client or when the information has become generally known.[[1]]
The purpose of the requirement that an attorney maintain client confidences is twofold. It advances the interests of the client by encouraging a free flow of information and the development of trust essential to an attorney-client relationship. Developments in the Law: Conflicts of Interest in the Legal Profession, 94 Harv.L.Rev. 1244, 1316 (1981). However, it also serves a second purpose fundamental to a fair adversary system. Our legal system cannot function fairly or effectively if an attorney has an informational advantage in the form of confidences gained during a former representation of his client's current opponent. Id. at 1315-16; United States v. Ostrer, 597 F.2d 337, 340 (2d Cir.1979); Ford v. Piper Aircraft Corp., 436 So.2d at 307-08 (purpose of trial court is to afford parties an impartial forum; trial court may decide that disqualification is mandated because one party has an unfair advantage over the other).
The question then is whether the insurers may "stand in the shoes" of their insured for purposes of seeking disqualification of the Schlesinger firm on grounds of conflict of interest. Comments to the Rules of Professional Conduct indicate that under certain circumstances someone other than the client may request disqualification. Thus, where a conflict "is such as clearly to call in question the fair or efficient administration of justice, opposing counsel may properly raise the question." Comment to Rule Regulating The Florida Bar 4-1.7. See In re Gopman, 531 F.2d 262 (5th Cir.1976) (government had standing to challenge alleged conflict of interest involving simultaneous representation of *633 labor union and three union officials who appeared as witnesses before a grand jury).
We find that the facts of this case call into question the fair administration of justice. Mr. Wilkerson is not exposed to any personal liability because he may be sued only up to the amount of any available insurance coverage. See Ard v. Ard, 414 So.2d 1066 (Fla. 1982) (modifying interfamily tort immunity doctrine to allow negligence action by a minor child against parent to the extent of any available insurance coverage). This is, in reality, not an action between Mr. Wilkerson and his child, but an action by the mother and child against the parent's insurance carriers. See id. at 1068. Mr. Wilkerson is in a position adverse to his daughter in theory only. He reasonably hopes to enhance his daughter's chance of recovery. The petitioners, on the other hand, will be acting in Mr. Wilkerson's defense, attempting to persuade the fact finder that he was not negligent in the automobile accident in order that they may avoid liability. Because of this situation, Wilkerson's consent to the firm's representation of his wife and daughter does not end the inquiry. Information disclosed by Mr. Wilkerson to his attorneys during the course of the attorney-client relationship could be used to prove that Mr. Wilkerson was negligent. This is adverse to the petitioners who are obligated to act in his defense. The unfairness of the situation results from the fact that Mrs. Wilkerson and her daughter have a potential informational advantage over those who must defend Mr. Wilkerson which was gained as a result of her law firm's former representation of Mr. Wilkerson in this action. It defies logic to suggest that the petitioners do not have a legitimate interest in seeking to prevent the opposing parties from using confidential information obtained from their insured through a prior attorney-client relationship. We conclude that the petitioners have standing to request the law firm's disqualification.
We next address the issue of the appropriate standard to apply to determine whether the Schlesinger firm should be disqualified. In conflict-of-interest cases such as this arising under the former Code of Professional Responsibility,[2] one seeking to disqualify opposing counsel was required to show that (1) an attorney-client relationship existed, thereby giving rise to an irrefutable presumption that confidences were disclosed during the relationship, and (2) the matter in which the law firm subsequently represented the interest adverse to the former client was the same or substantially related to the matter in which it represented the former client. Ford v. Piper Aircraft Corp., 436 So.2d at 305; Sears, Roebuck & Co. v. Stansbury, 374 So.2d at 1051. This standard was based on the Code of Professional Responsibility, Canon 4, which provided that an attorney should preserve the confidences and secrets of a client. Id. at 1053.
In Junger Utility & Paving Co. v. Myers, 14 F.L.W. 2650 (Fla. 1st DCA, Nov. 15, 1989), the court applied the same standard to a question of disqualification arising under the new Rules of Professional Conduct.[3] Like the Junger court, we do not believe that a different standard now applies because the specific admonition to avoid the appearance of impropriety does not appear in the Rules of Professional Conduct. See also Brent v. Smathers, 529 So.2d 1267 (Fla. 3d DCA 1988) (disqualification required under current Rules of Professional Conduct to avoid appearance of impropriety). The Rules of Professional Conduct requiring confidentiality serve the same purposes as the confidentiality requirements of the Code of Professional Responsibility. *634 Similarly, the need for the irrefutable presumption continues to exist, just as under the former code. The presumption acknowledges the difficulty of proving that confidential information useful to the attorney's current client was given to the attorney. It also protects the client by not requiring disclosure of confidences previously given to the attorney. See Government of India v. Cook Indus., Inc., 422 F. Supp. 1057, 1060 (S.D.N.Y. 1976) (if two actions are substantially related, court will not require proof that attorney had access to confidential information, nor give weight to attorney's assertion that he had no access to and did not possess confidential information), aff'd, 569 F.2d 737 (2d Cir.1978).
Accordingly, we disagree with the court below that actual proof of prejudice is a prerequisite to disqualification under these circumstances. The Schlesinger firm represented Mr. Wilkerson in the personal injury action for more than two years, and the existence of this relationship raised the irrefutable presumption that confidences were disclosed. Moreover, the firm continues to represent Mr. Wilkerson in the medical malpractice action. Under Florida law, Mr. Wilkerson could be found liable in the instant case not only for those injuries which were sustained by his daughter in the automobile accident but also for any injuries she received as a result of any subsequent medical malpractice. Stuart v. Hertz Corp., 351 So.2d 703 (Fla. 1977); J. Ray Arnold Lumber Corp. v. Richardson, 105 Fla. 204, 141 So. 133 (1932). Thus, even now Mr. Wilkerson may be disclosing confidences to the Schlesinger firm as his counsel in the medical malpractice action which could be used against him by the Schlesinger firm in the instant case.
In reaching our decision, we do not imply any misconduct on the part of the Schlesinger firm. In this respect, we find the statement in Rotante v. Lawrence Hospital, 46 A.D.2d 199, 200, 361 N.Y.S.2d 372, 373 (1974), apropos:
While these facts neither indicate nor imply any departure from professional conduct or breach of any ethical canon, we cannot escape the conclusion that this is a situation rife with the possibility of discredit to the bar and the administration of justice. Obviously Mr. Turkewitz cannot erase from his mind the confidences he received from his former client or the plan of defense he envisaged. Though we do not dispute his good faith or the good faith of the firm representing plaintiff, both the possibility of conflict of interest and the appearance of it are too strong to ignore.
We quash the decision below and direct that the Schlesinger firm be disqualified from further representation of Mrs. Wilkerson and her minor child in this action.
It is so ordered.
SHAW, C.J., OVERTON, McDONALD and KOGAN, JJ., and EHRLICH, Senior Justice, concur.
BARKETT, J., dissents with an opinion.
BARKETT, Justice, dissenting.
I do not believe we have jurisdiction as the district court opinion does not create conflict on any issues addressed here.
NOTES
[1] Rule Regulating The Florida Bar 4-1.7 is also pertinent here. That rule provides:

(a) A lawyer shall not represent a client if the representation of that client will be directly adverse to the interests of another client, unless:
(1) The lawyer reasonably believes the representation will not adversely affect the lawyer's responsibilities to and relationship with the other client; and
(2) Each client consents after consultation. Mr. Wilkerson is, in effect, both a former client of the Schlesinger firm for purposes of rule 4-1.9 (in the personal injury action) and a current client for purposes of rule 4-1.7 (in the medical malpractice action). The duty of confidentiality is present regardless of whether Mr. Wilkerson is viewed as the firm's former or current client.
[2] The Code of Professional Responsibility was replaced by the Rules of Professional Conduct, effective January 1, 1987. The Fla. Bar Re Rules Regulating the Fla. Bar, 494 So.2d 977 (Fla.), opinion corrected by 507 So.2d 1366 (Fla. 1986).
[3] Even though the Junger court found that the law firm should have been disqualified, the party seeking disqualification was required to show actual prejudice to reverse the final judgment because the case had already proceeded to final judgment. The instant case has not proceeded to final judgment. The insurers sought interlocutory review of the trial court's denial of their motions for disqualification by way of petitions for writ of certiorari in the district court of appeal.