David ROBERTSON, Appellant–Plaintiff,

v.

Christopher WITTENMYER, Appellee–Defendant.

No. 67A05–0006–CV–248.

Court of Appeals of Indiana.

Oct. 19, 2000.

James A. McGlone, McGlone Law Offices, Terre Haute, Indiana, Attorney for Appellant.

Michael G. Getty, Rori L. Goldman, Hill Fulwider McDowell Funk & Matthews, Garrett V. Conover, Kopka Landau & Pinkus, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

KIRSCH, Judge

David Robertson appeals from the trial court's order disqualifying his counsel, raising one issue: whether the trial court abused its discretion in disqualifying his counsel because of a conflict of interest.

We affirm.

## FACTS AND PROCEDURAL HISTORY

On August 16, 1998, David Robertson was a passenger in a vehicle driven by Christopher Wittenmyer. Wittenmyer's vehicle was involved in a three-vehicle chain reaction collision in which it rear-ended a bus and was hit from behind by a station wagon, although the evidence was unclear about which happened first. Both men suffered head injuries and had no memory of the accident. James McGlone represented both Wittenmyer and Robertson against the driver and owner of the station wagon and obtained a settlement for both clients. Robertson's medical expenses greatly exceeded the amount of his settlement, however, so McGlone continued to investigate other means of recovery for him. In doing so, he uncovered evidence that suggested that Wittenmyer may have been at fault as well. After obtaining Wittenmyer's consent, McGlone filed suit on behalf of Robertson against Wittenmyer in October 1999.

On February 9, 2000, Wittenmyer filed a motion to disqualify McGlone from representing Robertson in this action. After a hearing, the trial court agreed that McGlone should be disqualified. He now appeals.

## DISCUSSION AND DECISION

Robertson contends that the trial court erred in determining that McGlone had a disqualifying conflict of interest. Al-

though the standard for reviewing a motion to disqualify in Indiana has never been specifically articulated, the cases apply an abuse of discretion standard. *See Hanna v. State,* 714 N.E.2d 1162, 1165 (Ind.Ct.App.1999), *trans. denied* (not an abuse of discretion); *Angleton v. Estate of Angleton,* 671 N.E.2d 921, 928 (Ind.Ct. App.1996), *trans. denied* (1997) (trial court did not err). Thus, we consider whether the trial court abused its discretion in granting Wittenmyer's motion to disqualify. *Compare Richardson–Merrell, Inc. v. Koller,* 472 U.S. 424, 105 S.Ct. 2757, 86 L.Ed.2d 340 (1985) (orders disqualifying counsel are not appealable under the federal rules).

■ A trial court may disqualify an attorney for a violation of the Rules of Professional Conduct that arises from the attorney's representation before the court. *Cincinnati Ins. Co. v. Wills,* 717 N.E.2d 151, 154 (Ind.1999). The trial court's authority has been described as necessary to prevent insult and gross violations of decorum, and that authority is limited to attorneys appearing before the court. *Id.*(quoting *McQueen v. State,* 272 Ind. 229, 231, 396 N.E.2d 903, 904 (1979)).

■ Our supreme court has held that a lawyer must be disqualified from a pending case if that case is substantially related to a matter in which the lawyer previously represented another client. *Angleton,* 671 N.E.2d at 928 (quoting *Corn v. State,* 659 N.E.2d 554, 556 (Ind.1995)). This test must be applied to the facts of each case to determine whether the issues in the prior and present cases are essentially the same or are closely interwoven therewith. *Id.* The public trust in the integrity of the judicial process requires that any serious doubt be resolved in favor of disqualification. *Id.*

■ Here, in spite of the fact that the same matter is at issue, not merely a substantially related one, Robertson argues that McGlone's continued representation of him does not violate the Rules of Professional Conduct.[1] Ordinarily, a lawyer may not act as an advocate against a client that the lawyer represents in some other matter, even if the other matter is wholly unrelated. Ind. Professional Conduct Rule 1.7 cmt. However, Prof. Cond. R. 1.7(a) states:

> A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:
>
> (1) the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and
>
> (2) each client consents after consultation.

Thus, the rule provides an exception to this general prohibition if two requirements are met: the attorney procures the consent of both clients, and the attorney reasonably believes that the attorney-client relationship will not be affected by the adverse representation. Here, both elements are in question. The evidence shows that McGlone notified Wittenmyer's insurer that Robertson was claiming against Wittenmyer in February 1999. The only evidence of consent in the record was Wittenmyer's written consent, which was signed in October 1999. Thus, it appears that although the consent preceded the filing of suit, it did not precede the onset of the adverse representation, which occurred prior to February 1999. Further, there is no evidence at all of Robertson's consent after full disclosure of the potential conflict of interest. Thus, McGlone's failure to obtain both consents prior to undertaking the representation adverse to Wittenmyer is a sufficient basis to disqualify him from representing Robertson in this action.

1. In addition to the car accident case, McGlone also represents Wittenmyer in a worker's compensation case.

■ Further, Prof. Cond. R. 1.7 also requires that the attorney have a reasonable belief that the representation will not affect the lawyer-client relationship. Here, we conclude that such a standard cannot be met. Thus, even a properly procured consent would not have complied with the rule. One commentator has explained:

A lawyer should not be allowed to sue an individual client on behalf of another present client, even if the lawyer represents the first client in a wholly unrelated matter, such as drafting his will. This follows, because the focus of Rule 1.7(a) is on impairment of the client-lawyer *relationship,* and it is unreasonable to postulate trusting relationships under those conditions.

. . .

The strong presumption against concurrent representation of clients with directly conflicting interests also operates as a limitation on the client consent provision of Rule 1.7(a)(2). In cases where one of the clients is an individual, as opposed to a business or other entity, the client's personal feelings will almost always be bound up in any legal transaction to which he or she is a party. The risk of impairing the client-lawyer relationship will therefore be high. Since a lawyer involved in such a case normally will not reasonably be able to entertain a belief that none of the client-lawyer relationships will be adversely affected. *The lawyer should not even ask for consent.* Rule 1.7(a)(1) alone would bar the representation even if consents were obtained from each of the clients.

GEOFFREY C. HAZARD, JR. & W. WILLIAM HODES, THE LAW OF LAWYERING § 1.7:203, at 233, § 1.7:207, at 240–41 (1998). The comment to the Rule provides further support for this interpretation. It states,

A client may consent to representation notwithstanding a conflict. However, as indicated in paragraph (a)(1) with respect to representation directly adverse to a client, and paragraph (b)(1) with respect to material limitations on representation of a client, when a disinterested lawyer would conclude that the client should not agree to the representation under the circumstances, the lawyer involved cannot properly ask for such agreement or provide representation on the basis of the client's consent.

Prof. Cond. R. 1.7 cmt. Thus, some situations, such as this, are nonconsentable because the attorney-client relationship of the client is inevitably affected.

In *Florida Bar v. Mastrilli,* 614 So.2d 1081 (Fla.1993), the supreme court of Florida disciplined an attorney for violating this rule. In that case, an attorney undertook representation of two women injured in an accident in which one was the driver and the other was her passenger. Later, the attorney issued a demand letter to the driver's liability carrier on behalf of the passenger for an amount in excess of the policy limit. When the insurer refused to pay, the attorney filed suit against the driver. The driver terminated her relationship with the attorney, and the suit was eventually settled within policy limits. The court held that the attorney violated the conflict of interest rule by suing his own client, thereby exposing her to personal liability, and suspended him from the practice of law for six months. *Id.* at 1082.

In this case, McGlone could have had no reasonable belief that filing suit against Wittenmyer would not affect their attorney-client relationship. We note that Robertson's medical expenses exceeded Wittenmyer's policy limits. Thus, Wittenmyer was potentially personally liable on any judgment in excess of his policy limits, and McGlone would have been responsible for securing that judgment. It defies logic to say that an individual's relationship with his attorney would not be affected by that attorney securing a large money judgment against him. Thus, McGlone's continued representation of Robertson violated Rule 1.7(a). *See also Florida Bar v. Wilson,* 714 So.2d 381 (Fla.1998) (lawyer, who formerly represented both husband and wife,

suspended for representing wife in dissolution proceedings, including moving to set aside a judgment he had secured on their behalf); *Junger Utility & Paving Co. v. Myers*, 578 So.2d 1117 (Fla.Dist.Ct.App. 1989) (firm disqualified where it represented paving company in other matters, then undertook representation of plaintiffs in car accident case against paving company and driver of other vehicle); *In re Disciplinary Proceedings Against Ratzel*, 218 Wis.2d 423, 578 N.W.2d 194 (1998) (lawyer suspended for representing both personal representative of estate and claimants, among other violations).

Other courts faced with this type of problem have analyzed it according to Prof. Cond. R. 1.9, which states:

A lawyer who has formerly represented a client in a matter shall not thereafter:

(a) represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation; or

(b) use information relating to the representation to the disadvantage of the former client except as Rule 1.6 or Rule 3.3 would permit or require with respect to a client or when the information has become generally known.

For instance, in *State Farm Mut. Auto. Ins. Co. v. K.A.W.*, 575 So.2d 630 (Fla. 1991), the court was confronted with precisely the same situation we have here. In that case, David Wilkerson was driving a rental car in which his wife and daughter were passengers when they were involved in an accident. The family hired a law firm to represent them against the driver and owner of the other vehicle, as well as against the medical care providers who treated the daughter after the accident. *Id.* at 631.

After the suit had been pending for some time, the attorney determined that Wilkerson's own negligence may have contributed to the accident. Wilkerson discharged the firm as counsel, and gave consent for counsel to file suit against him on behalf of his wife and daughter. After filing suit against Wilkerson, the firm continued to represent the family in the medical malpractice action. *Id.*

Wilkerson's liability insurer moved for counsel's disqualification based on its conflict of interest and the potential for the firm to use confidential information gained during its representation of Wilkerson in the action against him. In response, Wilkerson filed an affidavit stating that he did not feel that the firm's continued representation of his wife and daughter disadvantaged him and that he did not consider anything he discussed with counsel privileged because he had disclosed everything in his deposition. The trial court denied the motion to disqualify, and the court of appeals affirmed. *Id.* at 631.

The supreme court of Florida reversed. It first noted that the liability insurer can stand in the shoes of the insured in such cases, because it is the insurer, not the insured, who is adverse to the plaintiff. It stated that in this case, Wilkerson hoped to enhance his wife and daughter's chance of recovery, while the insurer's interest is in avoiding liability. Thus, the insurer is the adverse party here. *Id.* at 632–33.

Citing Rules 4–1.7 and 4–1.9 governing conflicts of interest and confidentiality, the court held that counsel was disqualified.[2] In situations where counsel represents a party in connection with a matter, then in effect switched sides, the duty to maintain client confidences is necessarily implicated. Thus, the court held that such circumstances raise an irrefutable presumption that confidences were disclosed. *Id.* at 633. Thus, the court held that counsel should have been disqualified. *Id.*

---

**2.** The relevant Rules Regulating The Florida Bar applicable at the time were virtually identical to Indiana's Rules of Professional Conduct, but are prefixed with a "4".

Similarly, in *Kenn Air Corp. v. Gainesville–Alachua County Regional Airport Auth.*, 593 So.2d 1219 (Fla.Dist.Ct.App. 1992), the court applied the irrefutable presumption of confidential communications to disqualify a firm from representing the defendant where it had previously represented the plaintiff's predecessor in interest on the same matter. The court reasoned that this interpretation of the rule was necessary in such cases because of the public's perception of the integrity of the bar, and the appearance of impropriety that arises in situations in which an attorney switches sides.... *Id.* at 1223.

Here, too, we presume that McGlone gained confidential information as a result of his representation of Wittenmyer. We reject McGlone's argument, like that of counsel in *K.A.W.* that the first client provided no confidences because all information was subsequently exposed through discovery. This fact is irrelevant to the preservation of the attorney-client privilege and the attorney's duty to keep client communications in confidence. *See also* Comment to Prof. Cond. R. 1.6 (The confidentiality rule applies not merely to matters communicated in confidence by the client but also to all information relating to the representation, whatever its source.)

Robertson also argues that the trial court erred in applying an appearance of impropriety standard in determining that disqualification was warranted here. He contends that any potential conflict is speculative at this point and that such contingencies cannot be the basis of disqualification. However, we note that other courts have applied such a standard, even though that language is no longer included in the ethical rules. *See, e.g., Kenn Air Corp.*, 593 So.2d at 1223. Further, our supreme court has held that the mere possibility of adverse effect upon exercise of free judgment prevents a lawyer from representing clients with opposing interests. *In re Gerde*, 634 N.E.2d 494, 497 (Ind.1994). Here, that possibility exists.

While we imply no improper motive on McGlone's part here, and we note his good faith attempt to comply with Prof. Cond. R. 1.7(a) by obtaining Wittenmyer's consent, we cannot say that the trial court abused its discretion in determining that he was disqualified from representing Robertson. McGlone is representing Robertson against Wittenmyer in the same matter in which he previously represented Wittenmyer. McGlone's situation here is so fraught with the potential for abuse that no reasonable attorney could believe that his representation of Robertson would not affect his relationship with Wittenmyer.

Affirmed.

FRIEDLANDER, J., and DARDEN, J., concur.