WALLACE, Judge.
 

 Earl L. Frye seeks review by certiorari of an order denying his motion to disqualify counsel for Ironstone Bank (the Bank) in an action filed by the Bank against Mr. Frye for an alleged breach of a loan guaranty. The question presented is whether the Bank’s counsel should be disqualified from representing the Bank in the action on the guaranty where the Bank’s counsel also represents Mr. Frye’s former lawyer in a legal malpractice action. Mr. Frye’s action for legal malpractice includes claims for matters directly related to his former lawyer’s representation of Mr. Frye in the defense of the Bank’s claims against him. Because the Bank’s counsel has access to confidential communications between Mr. Frye and his former lawyer concerning the action on the guaranty by virtue of its representation of the former lawyer in the malpractice action, we conclude that the Bank’s counsel is disqualified from representing the Bank in the action on the guaranty. Accordingly, we grant the petition for a writ of certiorari.
 

 I. THE FACTUAL BACKGROUND
 

 In 2009, the Bank sought to foreclose on a note and mortgage against • a Florida limited liability company (the LLC). The Bank alleged that the LLC owed it $2,247,810.97 plus interest under the note. The Bank also sought to enforce personal guaranties of the note executed by Mr. Frye and others. Initially, the firm of Salvatori, Wood, Buckel & Weidenmiller, P.L. (the Salvatori firm) represented the Bank.
 

 Later, the LLC filed a bankruptcy petition. The property subject to the mortgage was sold, and the net proceeds of the sale were paid to the Bank. In a second amended complaint, the Bank alleged that the net proceeds from the sale of the property were insufficient to cover the bal-
 
 *1048
 
 anee owed by the LLC on the note, and the Bank sought to recover the deficiency against Mr. Frye and others on their personal guaranties.
 
 [1]
 

 Mr. Frye initially retained Robin Trupp and Arnstein & Lehr, LLP (the Arnstein firm), to defend him against the Bank’s claims. Later, Mr. Frye discharged Mr. Trupp and the Arnstein firm and retained new counsel to represent him in the Bank’s action. He then instituted a legal malpractice action against Mr. Trupp and the Arnstein firm based upon their representation of him in the Bank’s action as well as in other matters involving loans and personal guaranties. Significantly, Mr. Frye alleged in his malpractice complaint that Mr. Trupp and the Arnstein firm obtained “confidences of [Mr. Frye] during their representation, including, without limitation, information gleaned from performing estate and asset planning for [Mr. Frye] giving [Mr. Trupp and the Arnstein firm] intimate knowledge of [Mr. Frye’s] financial circumstances.” Although the exact sequence of events is not clear from our limited record, Mr. Frye’s new counsel sent a demand letter on the malpractice claim to Mr. Trupp and the Arnstein firm on January 20, 2010. Mr. Frye’s new counsel filed the action for legal malpractice against Mr. Trupp and the Arnstein firm on or about March 29, 2010.
 

 On April 23, 2010, the circuit court entered an order substituting the firm of Henderson, Franklin, Starnes
 
 &
 
 Holt, P.A. (Henderson Franklin), for the Salvatori firm as counsel for the Bank. In turn, Mr. Trupp and the Arnstein firm retained Henderson Franklin to represent them in Mr. Frye’s malpractice action. Henderson Franklin filed motions on behalf of Mr. Trupp and the Arnstein firm in the malpractice action on or about May 5, 2010. Although Mr. Trupp and the Arnstein firm once represented Mr. Frye in opposition to the Bank in its action on the guaranty, they are now aligned with Henderson Franklin against Mr. Frye in the malpractice action. Simultaneously, Henderson Franklin opposes Mr. Frye by representing the Bank in its efforts to collect money from him.
 

 II. THE MOTION TO DISQUALIFY
 

 In September 2010, Mr. Frye filed a motion to disqualify Henderson Franklin as counsel for the Bank in its action on the guaranty. In his motion, Mr. Frye noted Henderson Franklin’s representation of the Bank in the action on the guaranty and its representation of Mr. Trupp and the Arnstein firm in his legal malpractice action for claims including — among other things — their defense of him against the Bank. Mr. Frye asserted that Henderson Franklin should be disqualified as counsel for the Bank in the action on the guaranty because it had gained an unfair informational advantage based upon the representation of him by Mr. Trupp and the Arn-stein firm in that matter. According to Mr. Frye, despite Mr. Trupp’s knowledge that Henderson Franklin was representing the Bank in the action on the guaranty, Mr. Trupp retained that firm,
 
 “albeit
 
 another attorney at the firm,” to represent him and his firm in the malpractice action. As a result, the Henderson Franklin firm had access to the files that Mr. Trupp created during his representation of Mr. Frye, “including extensive estate planning and other confidential attorney-client information [Mr. Trupp] is irre[f]utably presumed to possess.” Mr. Frye conceded that two different attorneys at Henderson
 
 *1049
 
 Franklin were representing the Bank in the action on the guaranty and Mr. Trupp and the Arnstein firm in the malpractice action. Nevertheless, he contended that “it is well-settled that a ‘Chinese wall’ cannot be constructed.”
 
 [2]
 
 Finally, Mr. Frye argued that the circumstances created an appearance of impropriety, which, by itself, was grounds for disqualification.
 

 At a hearing on the motion to disqualify, Mr. Frye’s counsel argued that Henderson Franklin should be disqualified based on “a direct conflict here because Mr. Trupp represented Mr. Frye in connection with this very case that’s before this very court, and that’s the subject of [Henderson Franklin’s] current representation of Mr. Trupp, which gives the Henderson Franklin firm an informational [ jadvantage, which under Florida Law is grounds for disqualification.” Mr. Frye’s counsel reasoned that there was an irrefutable presumption that confidences had been exchanged between Mr. Frye and Mr. Trupp. He also pointed out that the Bank was seeking a money judgment against Mr. Frye in the action on the guaranty and would surely seek to execute on any judgment that the court might enter. Mr. Frye’s counsel observed that the estate planning work performed by the Arnstein firm for Mr. Frye made it “the best ally possible” for Henderson Franklin with regard to the collection of any potential judgment against Mr. Frye.
 

 At the conclusion of the hearing, the circuit court ruled that “the basic problem with [Mr. Frye’s] position is there is no attorney/client relationship between Mr. Frye and Henderson Franklin. Therefore, there is no irrefutable presumption because you’ve not established an attorney/client relationship.” The circuit court stated further that Mr. Frye failed to meet his burden of establishing “the procedural and substantive requirements for disqualification because, number one, Frye and Henderson Franklin never shared an attorney/client relationship, and, number two, there has been no evidentiary showing that the matter in which Henderson Franklin is representing ... Trupp and [the Arnstein firm] ... are the same or substantially related matters.” The circuit court’s written order denying the motion to disqualify makes similar findings and conclusions, citing to this court’s decision in
 
 Kaplan v. Divosta Homes, L.P.,
 
 20 So.3d 459 (Fla. 2d DCA 2009).
 

 III. DISCUSSION
 

 A. Preliminary Matters
 

 Orders granting or denying motions to disqualify a party’s attorney are reviewable by certiorari.
 
 Gonzalez ex rel. Colonial Bank v. Chillura,
 
 892 So.2d 1075, 1076 (Fla. 2d DCA 2004);
 
 Pinebrook Towne House Ass’n v. C.E. O’Dell &
 
 Assocs.,
 
 Inc.,
 
 725 So.2d 431, 433 (Fla. 2d DCA 1999). “Disqualification of a party’s counsel is an extraordinary remedy and should be resorted to sparingly.”
 
 Kaplan,
 
 20 So.3d at 461; see
 
 also Pinebrook,
 
 725 So.2d at 433 (noting same). When a court is confronted with a motion to disqualify counsel, it should “consider the competing interests of maintaining professional standards and preserving client confidences [on the one hand], and on the other hand, permitting a party to hire their counsel of choice.”
 
 Kaplan,
 
 20 So.3d at 461-62. Mr. Frye is entitled to relief if he can establish that the circuit court departed from the essential requirements of the law in denying his motion.
 
 See Gonzalez,
 
 892 So.2d at 1077;
 
 Pinebrook,
 
 725 So.2d at 433.
 

 
 *1050
 

 B. Framing the Issue
 

 Mr. Frye’s argument for disqualification is based upon Henderson Franklin’s receipt in the context of the Bank’s action against Mr. Frye of privileged information from Mr. Frye’s former counsel as a result of Henderson Franklin’s simultaneous representation of the Bank and of Mr. Trupp and the Arnstein firm. The legal malpractice action concerns, in part, Mr. Trupp’s representation of Mr. Frye in the same action in which Henderson Franklin is currently representing the Bank. The allegations of the malpractice complaint also concern Mr. Trupp’s representation of Mr. Frye on estate and asset planning matters, during which Mr. Frye alleges that Mr. Trupp gained detailed knowledge of his financial circumstances. Such knowledge could be invaluable to the Bank in collecting a judgment against Mr. Frye.
 

 Thus the question presented is whether Henderson Franklin’s access to confidential communications between Mr. Frye and his former lawyer through its representation of the lawyer in the legal malpractice action is sufficient to require the disqualification of Henderson Franklin from continued representation of the Bank in the action against Mr. Frye on the guaranty. We conclude that the unfair informational advantage accruing to Henderson Franklin through its representation of Mr. Frye in the legal malpractice action disqualifies it from further representation of the Bank in its action against Mr. Frye on the guaranty. The decision of the Third District in a case involving similar facts,
 
 Adelman v. Adelman,
 
 561 So.2d 671 (Fla. 3d DCA 1990), guides our decision on this point. We turn now to an examination of the
 
 Adelman
 
 decision.
 

 C. The Adelman Decision
 

 In
 
 Adelman,
 
 a husband sued his wife for dissolution of marriage.
 
 Id.
 
 at 671. The wife retained attorney Fred Dellapa to represent her in that proceeding.
 
 Id.
 
 Later, the wife discharged Mr. Dellapa and retained new counsel to represent her in an appeal from the final judgment of dissolution of marriage.
 
 Id.
 
 The husband, who was previously represented by other counsel in the tidal coui't, retained the Vogel-sang Law Firm (Vogelsang) to represent him in the appeal.
 
 Id.
 
 at 671-72. After the appellate court reversed the final judgment in part and remanded for a de novo evidentiary hearing, Vogelsang entered an appearance on behalf of the husband in the trial court.
 
 Id.
 
 at 672. The wife then filed a legal malpractice claim against her former attorney, Mr. Dellapa, alleging that he had negligently represented her in the dissolution matter at the trial level.
 
 Id.
 
 Mr. Dellapa, in turn, retained the husband’s counsel, Vogelsang, to represent him in the legal malpractice action.
 
 Id.
 
 Both the dissolution proceeding and the malpractice action were assigned to the same trial judge.
 
 Id.
 

 The wife filed a motion to disqualify Vogelsang from representing the husband in the dissolution proceeding, and the trial court granted the motion.
 
 Id.
 
 The husband then petitioned for certiorari review of the order granting the motion to disqualify.
 
 Id.
 
 The Third District noted that “[t]he question presented for review is whether a lawyer is properly disqualified from representing a party in a marriage dissolution action — where, as here, the lawyer also represents the opposing party’s ex-lawyer in a legal malpractice action brought by the opposing party arising out of the same dissolution action.”
 
 Id.
 
 at 671.
 

 In addressing this issue, the Third District stated that “[i]t is axiomatic that a lawyer in representing a party to a lawsuit may not, in the absence of a court order, become privy to any privileged attorney-client communications involving the opposing party to the lawsuit.”
 
 Id.
 
 at 672. It
 
 *1051
 
 further observed that “it would be a shocking breach of the attorney-client privilege for a lawyer to surreptitiously eavesdrop on the confidential communications between the opposing party and his counsel” as such communications are clearly privileged.
 
 Id.
 
 The court reasoned:
 

 This being so, we think it clear that a lawyer may not indirectly accomplish what he cannot accomplish directly— that is, a lawyer should not be able to penetrate the secrecy of an opposing party’s attorney-client communications by virtue of what the lawyer may learn from confidential communications obtained from another of the lawyer’s clients in a related case. Stated differently, a lawyer should not be allowed to represent two clients in related cases— when one client can lawfully inform the lawyer of privileged attorney-client communications involving the opposing party in the second client’s case. Indeed, it has been held that a lawyer may be disqualified from representing a client when otherwise privileged material belonging to the opposing party has been inadvertently disclosed to the lawyer.
 
 General Accident Ins. Co. v. Borg-Warner Acceptance Corp.,
 
 483 So.2d 505 (Fla. 4th DCA 1986) (insurer’s claim file containing privileged material inadvertently sent by trial judge to opposing party’s lawyer; lawyer disqualified).
 

 Id.
 

 In upholding the order disqualifying the husband’s counsel, the Third District recognized that in representing Mr. Dellapa, Vogelsang became privy to confidential communications between the wife and Mr. Dellapa because Mr. Dellapa could lawfully disclose to Vogelsang all aspects of his representation of the wife in the dissolution proceeding.
 
 Id.
 
 Thus, Vogelsang, by virtue of its dual representation, was able to discover confidential communications between the opposing party, the wife, and her counsel in the pending dissolution proceeding. The Third District held that “plainly, the firm may not be permitted to accomplish such an indirect breach of the attorney-client privilege and was properly disqualified from representing [the husband] in the marriage dissolution proceeding.”
 
 Id.
 
 at 672-73.
 

 The Third District recognized that by suing her former counsel, the wife had not waived her attorney-client privilege with Mr. Dellapa “as to the entire world.”
 
 Id.
 
 at 673. “[S]uch waiver [was] limited solely to the legal malpractice action,” and Mr. Dellapa was limited to revealing confidential information related to his representation of the wife only to the extent necessary for the defense of the malpractice claim.
 
 Id.
 
 (citing Fla. Bar. R. Prof. Conduct 4-1.6(c)(2), now codified at R. Regulating Fla. Bar 4-1.6(c)(4)). On the other hand, the court observed, Mr. Dellapa was entitled to “make a full disclosure of his entire representation of [the wife] to the lawyer he hire[d] to represent him on the legal malpractice claim.”
 
 Id.
 
 The court reasoned that
 

 where, as here, [Mr. Dellapa] hires as his counsel on the malpractice claim the lawyer who also represents [the husband] in the underlying dissolution action, it is plain (a) that [the wife’s] privileged attorney-client communications may now be disclosed to [the husband’s] lawyer, and (b) that the lawyer so exposed to such privileged material [Vogel-sang] may be disqualified from representing [the husband].
 

 Id.
 
 Thus the Third District concluded that the trial court did not depart from the essential requirements of the law in disqualifying Vogelsang from representing the husband and denied his petition for a writ of certiorari.
 
 Id.
 
 In our view, the reasoning in
 
 Adelman
 
 applies to the substantially similar circumstances present in this case.
 

 
 *1052
 

 D. Analysis
 

 Mr. Trupp is irrefutably presumed to have obtained confidential information from his former client, Mr. Frye, in the context of his representation of Mr. Frye in the Bank’s action on the guaranty and in estate and asset planning matters.
 
 See State Farm Mut. Auto. Ins. Co. v. K.A.W., 575
 
 So.2d 630, 638 (Fla.1991) (noting that the existence of an attorney-client relationship gives rise to an irrefutable presumption that confidences were disclosed). With certain exceptions, Mr. Trupp is obligated not to reveal information relating to his representation of Mr. Frye without Mr. Frye’s informed consent.
 
 See
 
 R. Regulating the Fla. Bar 4-1.6(a) (“A lawyer shall not reveal information relating to representation of a client except as stated in subdivisions (b), (c), and (d), unless the client gives informed consent.”). However, because Mr. Frye has sued Mr. Trupp in connection with that representation, Mr. Trupp may lawfully reveal those privileged communications to the extent necessary for the defense of the malpractice action.
 
 See
 
 R. Regulating Fla. Bar 4-1.6(c)(4), (e) (“A lawyer may reveal ... information [relating to representation of a client] to the extent the lawyer reasonably believes necessary ... to respond to allegations in any proceeding concerning the lawyer’s representation of the client.... When disclosure is mandated or permitted, the lawyer shall disclose no more information than is required to meet the requirements or accomplish the purposes of this rule.”).
 

 In accordance with the applicable ethical rules, Mr. Frye’s privileged attorney-client communications with Mr. Trupp may now be disclosed to his opponent’s counsel in the Bank’s action on the guaranty, Henderson Franklin. It follows that Henderson Franklin must be disqualified from representing the Bank in its action against Mr. Frye because of the unfair informational advantage Henderson Franklin has gained by virtue of its representation of Mr. Trupp and the Arnstein firm in the defense of Mr. Frye’s malpractice action.
 
 See Adelman,
 
 561 So.2d at 673;
 
 see also Castellano v. Winthrop,
 
 27 So.3d 134, 137 (Fla. 5th DCA 2010) (noting that “disqualification is appropriate where a party obtains an unfair informational or tactical advantage through the disclosure of privileged information to that party’s counsel”);
 
 Greig v. Macy’s Ne., Inc.,
 
 1 F.Supp.2d 397 (D.N.J.1998) (requiring disqualification of counsel under facts similar to those in
 
 Adelman
 
 and in this case).
 

 E. Kaplan is Distinguishable
 

 Here, the circuit court applied the conflict of interest analysis in this court’s decision in
 
 Kaplan
 
 to conclude that Mr. Frye had failed to meet the requirements for the disqualification of Henderson Franklin. The circuit court reasoned that because Mr. Frye was not a current or former client of Henderson Franklin, no irrefutable presumption arose that confidential information was disclosed between Mr. Frye and Henderson Franklin. The court also stated that Mr. Frye had failed to make an evidentiary showing that the Bank’s action on the guaranty was the same or substantially the same as the legal malpractice matter in which Henderson Franklin is representing Mr. Frye’s former counsel.
 

 However, in
 
 Kaplan,
 
 Mr. and Mrs. Kap-lan sought to disqualify their opponent’s counsel based upon counsel’s alleged conflict of interest. That conflict allegedly arose from the representation by the opposing counsel’s colleague of an adverse party in separate litigation, a probate case, in which Mr. Kaplan was involved. Quoting from
 
 State Farm Mutual Automobile Insurance Co. v. K.A.W.,
 
 575 So.2d at 633, the
 
 Kaplan
 
 court noted that a proponent
 
 *1053
 
 of a motion to disqualify counsel based upon a conflict of interest must establish that
 

 (1) an attorney-client relationship existed, thereby giving rise to an irrefutable presumption that confidences were disclosed during the relationship, and (2) the matter in which the law firm subsequently represented the interest adverse to the former client was the same or substantially related to the matter in which it represented the former client.
 

 20 So.3d at 462. In applying the above test to the facts before it, the
 
 Kaplan
 
 court held that “[b]ecause no attorney-client relationship existed between the Kaplans and the Firm [sought to be disqualified], the Kaplans failed to meet the threshold requirement for disqualification
 
 based on a conflict of interest.” Id.
 
 (emphasis added).
 

 Unlike in
 
 Kaplan,
 
 Mr. Frye is not seeking to disqualify Henderson Franklin based upon a claimed conflict of interest. Thus Mr. Frye need not establish that he had an attorney-client relationship with Henderson Franklin and that the Bank’s action on the guaranty and the legal malpractice claim are the same or are substantially related. Instead, Mr. Frye is seeking the disqualification of Henderson Franklin based on the unfair informational advantage it derives from its access to his confidential communications to Mr. Trupp through its representation of Mr. Trupp and the Arnstein firm in the legal malpractice action. Here, the conflict of interest analysis in
 
 Kaplan
 
 is not applicable.
 
 [3]
 

 IV. CONCLUSION
 

 By relying on the conflict of interest analysis in
 
 Kaplan,
 
 the circuit court applied the wrong legal rule to Mr. Frye’s motion for disqualification. The circuit court’s application of the wrong law in deciding Mr. Frye’s motion to disqualify is a departure from the essential requirements of the law. Moreover, the Third District’s analysis in
 
 Adelman
 
 is applicable here. The circuit court should have granted Mr. Frye’s motion to disqualify Henderson Franklin under the reasoning in
 
 Adelman.
 

 [4]
 

 Accordingly, we grant the petition for a writ of certiorari, quash the order under review, and remand this case for further proceedings.
 

 
 *1054
 
 Petition granted, order quashed, and case remanded.
 

 WHATLEY and VILLANTI, JJ., Concur.
 

 [1]
 

 . In a first amended complaint, the Bank alleged that Mr. Frye had fraudulently transferred substantially all of his assets to a family limited partnership after the Bank's claim against him arose; the Bank sought to avoid the alleged fraudulent transfer. The Bank did not assert a fraudulent transfer claim in its second amended complaint.
 

 [2]
 

 .
 
 See
 
 R. Regulating Fla. Baraaa 4-1.10(b);
 
 Birdsail v. Crowngap Ltd.,
 
 575 So.2d 231, 232 (Fla. 4th DCA 1991);
 
 Edward J. DeBartolo Corp. v. Petrin,
 
 516 So.2d 6, 7 (Fla. 5th DCA 1987).
 

 [3]
 

 . We understand that the Kaplans also claimed that their opponents’ counsel had received an unfair informational advantage in the pending litigation.
 
 Kaplan,
 
 20 So.3d at 461. The purported source of this information was the Kaplans’ disclosure of information to the relatives of a next-door neighbor, who was an attorney whose firm represented an adverse party in probate litigation to which Mr. Kaplan was a party.
 
 Id.
 
 The
 
 Kap-lan
 
 court dismissed the claim that opposing counsel had an unfair informational advantage for four reasons. First, the communications in question were not confidential or privileged.
 
 Id.
 
 at 462. Second, the Kaplans did not have an attorney-client relationship with the recipients of the information.
 
 Id.
 
 Third, "the Rules of Professional Conduct addressing the use of information to the disadvantage of another party only contemplate situations where information is gained from and used against a prior or current client.”
 
 Id.
 
 at 462-63 (citing R. Regulating Fla. Bar 4-1.8(b), 4-1.9(b)). Finally, Mr. Kaplan had acknowledged that, ultimately, the information claimed to be confidential would be disclosed in the underlying litigation.
 
 Id.
 
 at 463. Thus the Kaplans’ claim that opposing counsel had an unfair informational advantage through access to privileged and confidential information was without merit.
 
 Id.
 
 at 462.
 

 [4]
 

 . In fairness to the circuit court, we note that neither Mr. Fiye nor the Bank directed the circuit court’s attention to the
 
 Adelman
 
 decision. However, Mr. Frye’s argument for the disqualification of the Henderson Franklin firm was consistent with the reasoning in
 
 Adelman.