**PHILIP MORRIS USA INC., Petitioner,**

v.

**Ada CARO, as Personal Representative of the Estate of Francisco Caro, Respondent.**

**No. 4D16–2416**

District Court of Appeal of Florida,
Fourth District.

December 7, 2016

---

1. Judge Martha C. Warner has been substituted for Judge W. Matthew Stevenson after his retirement from the Court.

J. Daniel Gardner of Shook, Hardy & Bacon LLP, Miami, and Geoffrey J. Michael of Arnold & Porter LLP, Washington, DC, for petitioner.

Juan P. Bauta, II, David A. Jagolinzer, and Allan B. Kaiser of The Ferraro Law Firm, P.A., Miami, for respondent.

**CONNER, J.**

Philip Morris USA, Inc. ("PM") seeks certiorari review of a trial court order denying its motion to disqualify an attorney and law firm as counsel for respondent/plaintiff, Ada Caro, personal representative of the Estate of Francisco Caro ("Caro"). PM claims that counsel previously represented it on matters substantially related to those in the pending lawsuit against it by Caro. For the reasons below, we grant the petition, quash the order denying disqualification, and remand for disqualification of the attorney and law firm.

### Pertinent Facts and Trial Court Proceedings

Caro sued PM in 2011 on behalf of a cigarette smoker who developed cancer and died. PM moved to disqualify Caro's counsel, Attorney Paulo Lima ("Lima") and the law firm for which he worked, the Ferraro Law Firm ("the Ferraro firm"). PM alleged that Lima had previously represented it in certain tobacco-related *Engle* litigation [1] while working as an associate at the law firm of Hunton & Williams LLP ("the Hunton firm"). After working in its New York and Miami offices, Lima left the Hunton firm to join the Ferraro firm, where he represents Caro in this lawsuit against PM.

In this case, PM attached to its motion to disqualify an affidavit by Brian V. Otero, a law partner in the Hunton firm, who said Lima had represented PM in numerous litigation and transactional matters for several years, "including smoking and

---

1. The term *"Engle* litigation" refers to a 1994 class action in which smokers and their survivors and/or estates sued tobacco companies and other entities for damages allegedly caused by smoking and related injuries. *R.J. Reynolds Tobacco Co. v. Engle*, 672 So.2d 39 (Fla. 3d DCA 1996) (*Engle I*). The Florida Supreme Court has allowed former qualified class members to rely on several of the liability findings from the class action in the context of their own individual lawsuits. *Engle v. Liggett Grp., Inc.*, 945 So.2d 1246, 1249 (Fla. 2006); *see also Philip Morris USA, Inc. v. Douglas*, 110 So.3d 419, 428–29 (Fla. 2013). Those cases are referred to as *"Engle* progeny" cases or *"Engle* litigation." This is one such case.

health litigation and the *Engle* litigation." Lima worked as an associate at the Hunton firm from September 2005 until May 2015. Otero further alleged:

Mr. Lima billed in excess of 1,500 hours on PM USA matters while associated with Hunton. The vast majority of those hours, over 1,300 hours, were spent working on product liability matters relating to smoking-and-health litigation, including approximately 375 hours on the *Engle* progeny litigation. Mr. Lima conducted extensive legal research on PM USA's legal strategies and defenses in the wake of the Florida Supreme Court's decision in *Engle*. He drafted multiple legal memoranda on topics such as plaintiffs' design defect theories in *Engle*, collateral estoppel issues in *Engle* progeny cases, and whether federal courts would recognize the *Engle* verdict, among others. Mr. Lima spent nearly 150 hours specifically working on post-trial matters related to the Lukacs case, which was the first post–*Engle* individual case tried in Miami, Florida. Mr. Lima also drafted evidentiary motions and worked on expert and company witness preparation in smoking and health cases.

In 2008, Mr. Lima conducted a review of internal PM USA scientific and marketing documents related to the research and development of cigarettes with reduced health risks. That project involved reviewing thousands of company documents, many of which were confidential, highly confidential and/or privileged. Mr. Lima billed over 100 hours on this project. Mr. Lima was a member of the PM USA smoking and health litigation team at Hunton. As such, he had access to highly confidential information regarding PM USA's business and litigation strategies, and was a participant in numerous conversations and meetings that addressed those strategies.

PM also cited and attached an affidavit of Kimberly Harlowe that was filed in a lawsuit against R. J. Reynolds Tobacco Company and others in 2015. Harlowe was senior manager for litigation technology support in the law department of Altria Client Services LLC ("ALCS") and was responsible for litigation databases maintained to support PM's litigation matters. She attested that, at the Hunton firm, Lima had access to PM litigation databases from 2005 through 2009, and that those databases "contain[ed] work product as well as confidential, highly confidential and privileged information." She further attested that in 2008, Lima conducted a review and analysis of PM internal company documents and reviewed more than 3,000 internal company documents, many of which were confidential, privileged, or both.

Caro opposed the motion to disqualify, arguing it was an attempt to reargue a motion that raised the same grounds and was denied in another *Engle* progeny case in Miami–Dade Circuit Court. Caro also argued that the Third District had denied motions on nearly identical grounds in other appeals involving PM. Further, Caro contended that the *res judicata* effect of the findings in the *Engle* class action left only "plaintiff-specific issues for individual trials," such that any work Lima had done defending PM previously was not in conflict in this case. In addition, Caro claimed that even if Lima were properly disqualified, this would not require disqualification of the Ferraro firm as well, since Lima did not acquire actual knowledge of PM's confidential information material to *this* plaintiff's case, or communicate such information to anyone at the Ferraro firm.

The trial court conducted an evidentiary hearing, and later denied the motion as to both Lima and the Ferraro firm. The trial court first applied the governing provision

of the Rules Regulating The Florida Bar, which states:

A lawyer who has formerly represented a client in a matter must not afterwards: (a) represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent; (b) use information relating to the representation to the disadvantage of the former client except as these rules would permit or require with respect to a client or when the information has become generally known; or (c) reveal information relating to the representation except as these rules would permit or require with respect to a client.

R. Regulating Fla. Bar 4–1.9(a).

The trial court recognized that Florida courts apply a two-prong test for determining whether disqualification is warranted. *State Farm Mut. Auto. Ins. Co. v. K.A.W.*, 575 So.2d 630, 633 (Fla. 1991). The first issue is whether there was an attorney-client relationship between the former client and counsel. Its existence creates an "irrefutable presumption that confidences were disclosed during the relationship." *Id.* As it was undisputed that Lima had formerly represented PM and was now representing a plaintiff suing PM, the trial court properly applied the presumption and found it to be supported by both Lima's and Otero's affidavits.

The second query is whether the matter in which the lawyer subsequently represents the interest adverse to the former client is the same or substantially related to the matter in which it represented the former client. *Id.* The trial court found that PM did not demonstrate this second prong and, thus, ruled that PM had failed to prove that Lima's past work on PM matters was "substantially related" to this case. The trial court also found the remaining issues "plaintiff-specific, including: class membership, individual reliance, comparative fault, and damages." It reasoned that once the plaintiff proved class membership, the *Engle I* findings conclusively established her claims.

Additionally, the trial court found support in the Comment to Rule 4–1.9, which provides:

A lawyer who recurrently handled a type of problem for a former client is not precluded from later representing another client in a wholly distinct problem of that type even though the subsequent representation involves a position adverse to the prior client.

R. Regulating Fla. Bar 4–1.9 comment.

Further, it found that any exposure Lima had to PM's legal strategies for challenging the *Engle* decision while he researched matters for PM at the Hunton firm related to issues now in the public domain. The trial court quoted:

Information that has been widely disseminated by the media to the public, or that typically would be obtained by any reasonably prudent lawyer who had never represented the former client, should be considered generally known and ordinarily will not be disqualifying.

R. Regulating Fla. Bar 4–1.9 comment.

The trial court found that while PM's strategies for challenging the *Engle* decision or for defending *Engle* progeny cases may have been confidential when Lima was exposed to them while drafting legal memorandums from 2006 to 2008, those strategies were "now well known to plaintiff's lawyers throughout Florida who have been litigating against PM USA." Thus, the trial court found that the passage of almost a decade since that time undermined any value of the information obtained. Based on its denial of disqualifica-

tion for Lima, the trial court also denied the motion to disqualify the Ferraro firm.

### Appellate Analysis

Certiorari lies to review a trial court order denying the motion to disqualify counsel and the law firm. *Manning v. Cooper*, 981 So.2d 668, 670 (Fla. 4th DCA 2008). The petitioner has the burden to show that the trial court departed from the essential requirements of law resulting in material harm of an irreparable nature. *Id.* (citing *Bared & Co. v. McGuire*, 670 So.2d 153 (Fla. 4th DCA 1996)). While orders on motions to disqualify are reviewed for abuse of discretion, Florida courts also recognize that disqualification of counsel "is an extraordinary remedy and should only be resorted to sparingly." *Manning*, 981 So.2d at 670 (quoting *Alexander v. Tandem Staffing Sols., Inc.*, 881 So.2d 607, 608–09 (Fla. 4th DCA 2004)); *see also Vick v. Bailey*, 777 So.2d 1005, 1007 (Fla. 2d DCA 2000).

### Disqualification of Lima

The trial court found that an attorney-client relationship existed between Attorney Lima and his former client, PM, raising the presumption that confidences were disclosed between PM and Lima. The second prong of the rule then calls for a determination of whether the matter in which Lima and the Ferraro firm represent the plaintiff in this lawsuit against PM is the "same or substantially related to the matter in which it represented the former client." *K.A.W.*, 575 So.2d at 633. "Matters are 'substantially related' for purposes of this rule [Rule 4–1.9] if they involve the same transaction or legal dispute, or if the current matter would involve the lawyer attacking work that the lawyer performed for the former client." R. Regulating Fla. Bar 4–1.9 comment.

We disagree with the trial court's conclusion that Lima's work for PM was not substantially related to the issues in Caro's lawsuit against PM in which Lima is now Caro's counsel. In so ruling, the trial court departed from the essential requirements of law. While there are some issues relating to Caro's case, and indeed in every plaintiff's case involving *Engle* litigation, that are unique to, and distinct from, defense matters on which Lima previously worked, we cannot conclude that Lima's extensive prior representation of PM in defending and strategizing about *Engle* progeny cases was not substantially related to at least some of the issues here. As PM has argued, each *Engle* progeny case includes a plaintiff's expert witness who testifies about the defendant company's conduct relating to concealment of information about the health risks of smoking and defective design of cigarettes. This expert testimony is said to vary little from case to case. This reaches beyond a unique plaintiff's issue.

In *Contant v. Kawasaki Motors Corp., U.S.A., Inc.*, 826 F.Supp. 427 (M.D. Fla. 1993), a plaintiff sued defendants for negligent or defective design or manufacture of a motorcycle. *Id.* at 428. The defendants sought disqualification of plaintiff's counsel as counsel had previously represented them on three occasions, all of which were motorcycle product liability cases. *Id.* The federal district court granted disqualification, ruling that allowing counsel to continue to represent the plaintiff "may not only result in a violation of the attorney-client relationship established between Graves [former counsel] and Kawasaki, but may severely call into question the morality of our legal system." *Id.* at 429–30; *see also Sears, Roebuck & Co. v. Stansbury*, 374 So.2d 1051 (Fla. 5th DCA 1979).

We find distinguishable, but supportive, this Court's decision in *Health Care & Retirement Corp. of America v. Bradley*, 961 So.2d 1071 (Fla. 4th DCA 2007), in which an attorney defended a nursing

home in negligence lawsuits based on pressure ulcers and residents' falls. *Id.* at 1072. That attorney then moved to a plaintiffs' law firm that represented a plaintiff suing a nursing home for negligence involving ulcers and falls. *Id.* The trial court denied a motion to disqualify counsel and this Court denied certiorari relief. *Id.* at 1072–74. This Court said: "Unlike two products liability cases involving the identical product, each negligence case turns on its own facts. . . . This lawsuit is not 'substantially related' to the earlier cases within the meaning of Rule 4–1.9(a)." *Id.* at 1074 (citation omitted); *see also Stansbury*, 374 So.2d at 1053–54.

By contrast, this *Engle* progeny case is a products liability case involving the identical product, and Lima's work for PM involved issues substantially related to the issues in this case against PM. PM points out that every lawsuit against it includes a verdict form calling for the jury to determine comparative fault and punitive damages against it based on the same course of conduct over a period spanning decades. Lima's defense in lawsuits against PM involving the same claims include issues substantially related to those involved in this litigation. It cannot be said the issues are wholly distinct.

We recognize that the same or similar issues on disqualification have been brought before other circuit and district courts with varying results. For instance, the Third District recently denied a certiorari petition on similar issues in *Philip Morris USA, Inc. v. Mooney*, 2016 WL 3478999 (Fla. 3d DCA Jun. 4, 2016), which the trial court in this case viewed as "highly persuasive." However, the Third District's denial of certiorari relief was without any comment. As such, the unelaborated denial of relief by the Third District in *Mooney* provides no support for the trial court's order in this case.[2]

### Disqualification of Ferraro Firm

Disqualification of the Ferraro firm is governed by application of Rule 4–1.10(b), which provides:

> (b) Former Clients of Newly Associated Lawyer. When a lawyer becomes associated with a firm, the firm may not knowingly represent a person in the same or a substantially related matter in which that lawyer, or a firm with which the lawyer was associated, had previously represented a client whose interests are materially adverse to that person and about whom the lawyer had acquired information protected by rules 4–1.6 and 4–1.9(b) and (c) that is material to the matter.

R. Regulating Fla. Bar 4–1.10(b).

▮ Under the commentary to this section, the movant seeking disqualification must demonstrate that the attorney had actual knowledge of material confidential information. R. Regulating Fla. Bar 4–1.10 comment. PM demonstrated this as discussed above. The burden then shifted to Caro to prove that Lima did not actually acquire confidential information material to this case. The only evidence Caro introduced to meet its burden of proof was Lima's affidavit prepared in another case in which Lima attested that while he worked for the Hunton firm, he did not

---

**2.** As the Florida Supreme Court pronounced in *Topps v. State*, 865 So.2d 1253 (Fla. 2004):

> To ensure that all issues are uniformly given due consideration, henceforth unelaborated orders denying relief in connection with all extraordinary writ petitions issued by Florida courts shall *not* be deemed to be decisions on the merits which would later

bar the litigant from presenting the issue under the doctrines of res judicata or collateral estoppel unless there is a citation to authority or other statement that clearly shows that the issue was considered by the court on the merits and relief was denied. *Id.* at 1258(emphasis in original).

meet with PM witnesses or in-house attorneys regarding the *Engle* litigation, nor did he attend depositions, trials or hearings on *Engle* litigation. However, this does not refute the detailed factual assertions made in the Otero affidavit, quoted above, and fails to show that Lima did not obtain confidential information material to the claims in this case. Therefore, we conclude that there was no competent, substantial evidence presented to support the denial of disqualification of the Ferraro firm by application of this rule.

We reject without further discussion the other claims advanced by Caro, including the claim of waiver of the issue of disqualification by PM.

*Petition granted and order quashed with directions to grant petitioner's motion to disqualify.*

Damoorgian and Klingensmith, JJ., concur.