# Third District Court of Appeal

**State of Florida**

Opinion filed November 30, 2016.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D16-2244
Lower Tribunal No. 05-13983
_____

**David Chessler, et al.,**
Petitioners,

vs.

**All American Semiconductor, Inc., etc.,**
Respondent.

On Petition for Writ of Certiorari to the Circuit Court for Miami-Dade County, Bronwyn C. Miller, Judge.

McIntyre, Thanasides, Bringgold, Elliott, Grimaldi & Guito, P.A., and Jennifer E. Jones, Richard J. McIntyre, and Johnny Hightower (Tampa), for petitioners.

Broad and Cassel, and Barbara Viota-Sawisch, Adam G. Rabinowitz, and Joseph H. Picone (Fort Lauderdale), for respondent.

Before SUAREZ, C.J., and ROTHENBERG and LOGUE, JJ.

LOGUE, J.

The Defendants below, David Chessler and several companies he either owns or controls, filed a petition for writ of certiorari to quash a non-final order disqualifying their counsel, Richard J. McIntyre, and his law firm based on a conflict of interest. We deny the petition for writ of certiorari because the Defendants failed to meet the high standard for certiorari review.

In the underlying lawsuit, All American Semiconductor, Inc., as the assignee of the claims of ParView, Inc., sued Chessler and his numerous business entities. All American alleges, among other claims, that Chessler perpetrated fraudulent transfers, conversion, breaches of contract, and breaches of fiduciary duty as the former CEO of ParView.

Chessler was the past president and had sole control over the management and operations of ParView, a company that manufactured, developed, and leased GPS systems for golf courses. ParView became indebted to All American Semiconductor, Inc., a company that provided computer hardware for ParView's GPS systems. ParView secured its debt to All American by entering into a series of agreements in which All American was granted a first priority security interest in ParView's assets. All American now alleges in the underlying suit that at the time ParView and All American entered into these security agreements, Chessler improperly transferred Parview's assets to himself, his entities, and third parties, to ParView's detriment.

2

Richard J. McIntyre, the attorney whose disqualification is at issue here, was the long-term attorney for ParView. He represented ParView in an earlier bankruptcy proceeding in which similar legal claims relating to Chessler's potential misconduct were raised. Despite McIntyre's former representation of ParView, Chessler hired McIntyre to defend him in this matter. All American filed an emergency motion to disqualify McIntyre as counsel based on a conflict of interest.

Chessler maintains McIntyre's former representation of ParView never involved McIntyre in the pursuit of ParView's claims against him. But after an evidentiary hearing, the trial court found otherwise. It noted in a detailed eleven-page order that (1) McIntyre was hired "to take any actions necessary to recover any voidable transfers"; (2) McIntyre continued to represent ParView after a bankruptcy examiner filed a report identifying ParView's potential claims against Chessler for wrongful transfers; and (3) in billing records submitted to the bankruptcy judge, McIntyre described the work he undertook for ParView as including "work on fraudulent transfer issues" and "attendance at the deposition of Chessler." The trial court also noted that McIntyre was likely privy to information he obtained while representing ParView regarding ParView's alleged payments to Chessler—an issue now in dispute in the underlying lawsuit.

3

The trial court granted All American's motion for disqualification, concluding in its written order that

> [a] conflict of interest exists because McIntyre represented ParView in the underlying bankruptcy creating an irrefutable presumption that client confidences were disclosed to McIntyre during the course of his representation of ParView, and, as such, confidences could be used to the detriment of [All American], as Parview's assignee. This would result in an impermissible, unfair informational and tactical advantage for the Defendants. McIntyre's representation of Chessler and his related entities would also create an appearance of impropriety, which requires disqualification.

We conclude that the facts of this case do not meet the high standard for issuance of a petition for writ of certiorari of a non-final order. "To support a writ of certiorari, the petitioner must demonstrate that the challenged non-final order (1) departs from the essential requirements of law, (2) results in material injury for the remainder of the case, and (3) such injury is incapable of correction on postjudgment appeal." Sea Coast Fire, Inc. v. Triangle Fire, Inc., 170 So. 3d 804, 807 (Fla. 3d DCA 2014). These last two factors are often referred to as "irreparable harm." Id.

The traditional manner of stating the test for certiorari of a non-final order is somewhat misleading because it places the substantive issue before the jurisdictional issue. As Judge Altenbernd recognized in an insightful review of the history of the writ, "a petitioner must establish that an interlocutory order creates

4

material harm irreparable by postjudgment appeal before this court has power to determine whether the order departs from the essential requirements of the law." Parkway Bank v. Fort Myers Armature Works, Inc., 658 So. 2d 646, 649 (Fla. 2d DCA 1995). For this reason, the test is best stated simply as: "there are two indispensable ingredients to common law certiorari when sought to review pretrial orders of the circuit courts: (1) irreparable injury to the petitioner that cannot be corrected on final appeal (2) caused by a departure from the essential requirements of law." Bared & Co. v. McGuire, 670 So. 2d 153, 156 (Fla. 4th DCA 1996) (en banc).

Here, without doubt, the order of disqualification at issue reflects a potential irreparable injury "because denying a party counsel of his or her choice is a material injury without appellate remedy." Event Firm, LLC v. Augustin, 985 So. 2d 1174, 1175 (Fla. 3d DCA 2008). We therefore have jurisdiction and turn to consider whether the order departs from the essential requirements of law.

To disqualify opposing counsel the movant must demonstrate that (1) "an attorney-client relationship existed," which "giv[es] rise to an irrefutable presumption" that confidential information was disclosed during the relationship; and (2) "the matter in which the law firm subsequently represented the interest adverse to the former client was the same or substantially related to the matter in which it represented the former client." State Farm Mut. Auto. Ins. Co. v. K.A.W.,

5

575 So. 2d 630, 633 (Fla. 1991); see also R. Regulating Fla. Bar 4-1.9 (governing conflicts of interest). In a certiorari proceeding, moreover, "[t]he required 'departure from the essential requirements of law' means something far beyond legal error. It means an inherent illegality or irregularity, an abuse of judicial power, an act of judicial tyranny perpetrated with disregard of procedural requirements, resulting in a gross miscarriage of justice." Jones v. State, 477 So. 2d 566, 569 (Fla. 1985) (Boyd, C.J., concurring specially). Given the findings of the trial court after the evidentiary hearing, the order of disqualification does not constitute the type of essential illegality and gross miscarriage of justice which is the focus of certiorari.

Certiorari denied.