# Third District Court of Appeal

## State of Florida

Opinion filed December 27, 2017.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D17-2093
Lower Tribunal No. 07-16277
_____

**R. J. Reynolds Tobacco Company,**
Petitioner,

vs.

**Barbara Morales,**
Respondent.


On Petition for Writ of Certiorari from the Circuit Court for Miami-Dade County, Bronwyn Miller, Judge.

King & Spalding LLP, and William L. Durham II (Atlanta, GA); Scott Michael Edson (Washington, D.C.); Carlton Fields Jorden Burt, P.A., and Benjamine Reid, Jeffrey A. Cohen, and Douglas J. Chumbley, for petitioner.

Gerson & Schwartz, P.A., and Philip M. Gerson, for respondent.


Before SUAREZ, LOGUE, and LINDSEY, JJ.

LOGUE, J.

R.J. Reynolds Tobacco Company seeks a writ of certiorari quashing an order in which the trial court rescinded its prior order allowing R.J. Reynolds to substitute Dr. Felix Torres for Dr. Myrna Bobet as its addiction expert in a new trial. The issue is whether this order is justified in light of the misconduct of the lawyer for R.J. Reynolds at the deposition of Dr. Torres. We find no error in the trial court's decision warranting certiorari and deny the petition.

Dr. Bobet was listed and testified as R.J. Reynolds's expert at the first trial of this matter. Following a mistrial for an unrelated reason, R.J. Reynolds moved the court to make the substitution because Dr. Bobet appeared at trial by videotape and was unable to appear in person, and R.J. Reynolds believed its relationship with Dr. Torres was such that he was more likely to appear at the new trial in person. R.J. Reynolds represented that Dr. Torres would testify to the same opinions offered by Dr. Bobet. The trial court granted the substitution but ordered R.J. Reynolds to assume the costs of Dr. Torres's deposition.

After Dr. Torres's telephonic deposition, the plaintiff below, Barbara Morales, moved to strike Dr. Torres as a witness due to R.J. Reynolds's misconduct during the deposition. In a meticulously detailed 42-page opinion which quotes extensively from the deposition, the trial court rescinded its prior order as a sanction for abusive discovery tactics.

Although the transcript of the deposition runs for only 232 pages, the trial court found that R.J. Reynolds's attorney made speaking objections or otherwise tried to influence Dr. Torres's testimony "on at least two hundred and thirty-five [235] occasions." Even after being warned by plaintiff's counsel, "if you coach the witness one more time I'm going to terminate the deposition and ask for relief," R.J. Reynolds's attorney continued to make speaking objections which appeared to be intended to steer Dr. Torres.

In fact, one-third of the way through the deposition, plaintiff's counsel, in apparent frustration, asked Dr. Torres whether he understood that the objections made by counsel for R.J. Reynolds were not intended to influence his answers to questions. R.J. Reynolds's attorney objected even to this question.

What is more, R.J. Reynolds's attorney then proceeded to openly coach Dr. Torres to consider her objections when framing answers to questions: "If I'm objecting to the form of the question, that means I think there's something wrong with the form of the question. So he [Dr. Torres] can ask you [plaintiff's counsel] to clarify it if he believes that there is something that he needs clarification for." R.J. Reynolds's lawyer continued, "So, I don't think you can just say that Dr. Torres should just ignore, you know objections and go ahead and answer the questions since I'm objecting that there's something wrong with your question." And thereafter Dr. Torres appears to have dutifully responded to speaking

objections by asking for clarification or making evasive answers, even when the questions were fairly straightforward such as, "Dr. Torres, are there any benefits to a smoker from smoking cigarettes?"

Finally, counsel for R.J. Reynolds repeatedly instructed Dr. Torres to not answer questions. RJ Reynolds's attorney instructed Dr. Torres not to answer why he made changes to his notes that were produced to the opposing side. She also instructed him not to answer questions like the following:

- Well, when you see your patients, don't you conduct an examination?

- Does conducting a clinical examination assist you in formulating an opinion about whether or not a patient is addicted?

- Is it your opinion that a clinical examination of Barbara Morales by you was unnecessary in this case for you to formulate a reliable opinion?

- So you believe that there's no need or benefit to you as a clinician in formulating your opinion to actually examine Ms. Morales?

The plaintiff's counsel admonished R.J. Reynolds's counsel, "let me just say one more thing on this subject and all of the other instructions you've given the witness not to answer. And that is that I intend to move to strike the witness from testifying in this trial based on this. So I am asking you one final time to please consider that." Heedless of the warning, R.J. Reynolds's counsel continued to instruct the witness not to answer. The instruction to Dr. Torres to not answer these

4

questions was a violation of Florida Rules of Civil Procedure 1.310(c) which provides "a party may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation on evidence directed by the court, or to present a motion under [Rule 1.310] subdivision (d)."

Citing to the continuous speaking objections, the on-the-record coaching of the witness, and the improper instructions to not answer, the trial court expressly found that R.J. Reynolds's counsel "engaged in a willful design to obstruct discovery and influence the testimony of the expert."

R.J. Reynolds responds in part to Morales's petition by pointing out instances where the plaintiff's attorney may also have acted improperly, including his statement to R.J. Reynolds's counsel towards the end of the deposition: "I'm not going to argue with you, young lady." After R.J. Reynolds's counsel reprimanded him, the plaintiff's counsel responded, "Please, just let the witness answer the questions then."

Whether a momentary lapse or a conscious attempt to demean and intimidate, the plaintiff's attorney's reference to opposing counsel's age and gender was clearly unprofessional. It does not, however, excuse the conduct of R.J. Reynolds's lawyer. As we have done in the past, we decline to adopt the practice of allowing one party's misconduct to wipe the slate clean of the other party's misconduct:

5

> In our view, it is no longer—if it ever was—acceptable for the judiciary to act simply as a fight promoter, who supplies an arena in which parties may fight it out on unseemly terms of their own choosing, and then, on the ground that the loser has asked for what he received, obediently raise the hand of the one who emerges victorious. We demean ourselves and the system of justice we serve when we permit this to occur.

Borden, Inc. v. Young, 479 So. 2d 850, 851–52 (Fla. 3d DCA 1985) (refusing to hold that one party's unprofessional conduct excused the other party's unprofessional conduct).

Certiorari is an extraordinary writ. "To support a writ of certiorari, the petitioner must demonstrate that the challenged non-final order (1) departs from the essential requirements of law, (2) results in material injury for the remainder of the case, and (3) such injury is incapable of correction on postjudgment appeal." Sea Coast Fire, Inc. v. Triangle Fire, Inc., 170 So. 3d 804, 807 (Fla. 3d DCA 2014). Moreover, "[t]he required 'departure from the essential requirements of law' means something far beyond legal error. It means an inherent illegality or irregularity, an abuse of judicial power, an act of judicial tyranny perpetrated with disregard of procedural requirements, resulting in a gross miscarriage of justice." Chessler v. All Am. Semiconductor, Inc., 225 So. 3d 849, 852 (Fla. 3d DCA 2016) (quoting Jones v. State, 477 So. 2d 566, 569 (Fla. 1985) (Boyd, C.J., concurring specially)). Given the trial court's well-reasoned and meticulously documented

6

order, and our own review of Dr. Torres's deposition, we fail to find the type of essential illegality and gross miscarriage of justice that is the focus of certiorari.

Certiorari denied.